UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMANDA WASHBURN,

               Plaintiff,

      v.

PORSCHE CARS NORTH AMERICA, INC., a
Delaware corporation,

               Defendant.

NO.

**CLASS ACTION COMPLAINT FOR FRAUD BY CONCEALMENT OR OMISSION; NEGLIGENT MISREPRESENTATION; UNJUST ENRICHMENT; VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT; BREACH OF EXPRESS WARRANTY; AND BREACH OF IMPLIED WARRANTY**

**JURY TRIAL DEMANDED**

     Plaintiff Amanda Washburn, individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Defendant Porsche Cars North America, Inc. ("Porsche"). Plaintiff alleges the following based on personal knowledge as to her own acts and based upon the investigation of counsel as to all other allegations.

## SUMMARY OF THE CASE

    1.     Porsche is one of the most recognizable luxury, high-performance automobile brands in the world with a reputation for advanced engineering and cutting-edge design.

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

2.      Porsche offers a 4-year/50,000-mile New Vehicle Warranty and a two-year/unlimited-mile Porsche Approved Certified Pre-Owned Limited Warranty for certified pre-owned Porsches. The warranties promise to "repair or replace any component part found to be defective in materials or workmanship during normal use."

3.      Porsche, however, has not honored this warranty statement when it comes to the 2005-2022 Porsche Cayenne and 2015-2022 Porsche Macan models that are sold with a sunroof (the "Class Vehicles").

4.      Consumers purchase the Class Vehicles reasonably expecting that their vehicles can be used in the normal and ordinary way cars are used, including driving in the rain and parking outside.

5.      Consumers reasonably expect that the Class Vehicles will not suffer water damage to the interior of the car when the sunroof is closed during inclement weather.

6.      Despite these reasonable expectations, Porsche knowingly, using deceptive practices, sold (and continues to sell) tens of thousands of Class Vehicles equipped with sunroofs that have inherent flaws in design, manufacturing, and/or workmanship that cause leaks resulting in damage to the vehicles' interior, including electrical systems, audio systems, upholstery, carpet, roof headliners, seats, and more (the "Defect").

7.      Porsche's parent-company, VW, has also long been aware of this Defect as it not only affects the Porsche Class Vehicles, but is present in other VW-owned brands, including Audi and Volkswagen vehicles sold and marketed in the United States.

8.      Porsche has long been aware of the Defect and has actively concealed it from consumers. Instead, Defendant has refused to disclose and has failed to warn consumers of the Defect and the propensity for the Class Vehicles' sunroofs to leak and the problems associated with such leaking. A diligent consumer could not reasonably learn of the Defects, safety risks, and potential damages on their own.

CLASS ACTION COMPLAINT - 2

9.      Porsche refuses and/or is unable to repair, correct, or otherwise remedy the sunroof Defect on the Class Vehicles, despite its promise to do so in express warranties to consumers.

10.      The Defect poses serious health and safety risks to consumers. Water intrusion into the interior of the Class Vehicles leads to the growth of toxic mold and can interfere with internal electrical systems and functions.

11.      Plaintiff, individually and on behalf of a class of all consumers who purchased or leased the Class Vehicles with the same or substantially similar component sunroof parts, seeks recovery for damages suffered because of Porsche's defective sunroofs. Plaintiff, individually and on behalf of all Class Members, brings this class action against Porsche for breach of express and implied warranties; violation of the Washington Consumer Protection Act; fraud by omission/fraudulent concealment; and unjust enrichment.

## JURISDICTION AND VENUE

12.      This Court has personal jurisdiction over Defendant Porsche because it has regular and systemic contacts within the State of Washington, in which it does business and has placed the Plaintiff's vehicles into the stream of commerce with the knowledge and intent that such vehicles would be purchased, owned, and used in the State of Washington.

13.      The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1332, the Class Action Fairness Act, because the aggregated claims of Class Members exceed $5 million, Plaintiff and Defendant are residents of different states, and there are at least one hundred members of the proposed class.

14.      Pursuant to 28 U.S.C. § 1391, venue is proper in this district because Defendant is subject to personal jurisdiction in this district and the damage arising from the Defect giving rise to Plaintiff's claims occurred in this District.

CLASS ACTION COMPLAINT - 3

1

**PARTIES**

2      15.    Plaintiff Amanda Washburn is a resident of Seattle, Washington located in King

3    County.

4      16.    Defendant Porsche Cars North America, Inc. is a Delaware corporation with its

5    principal place of business at One Porsche Drive, Atlanta, Georgia, 30354.

6      17.    Defendant Porsche Cars North America markets, distributes, and sells Porsche

7    automobiles, including the Class Vehicles, in multiple locations across the United States,

8    including Washington. Porsche also developed and disseminated the owners' manual and

9    warranty booklets, advertisements, and other promotional materials relating to the Class

10   Vehicles in Washington and across the United States.

11

**FACTUAL BACKGROUND**

12      18.    Defendant manufactures, markets, and distributes mass-produced automobiles in

13   the United States under the Porsche brand name.

14      19.    The Porsche vehicles that make up the Class Vehicles in this case are the 2005-

15   2022 Porsche Cayenne and 2015-2022 Porsche Macan models that are sold with a sunroof.

16   Plaintiff anticipates amending the Class Vehicles' definition upon Defendant identifying in

17   discovery all the Porsche vehicles manufactured and sold with the relevant defective sunroofs.

18      20.    The defective sunroof drains in all Class Vehicles are substantially similar in

19   design and manufacture.

20      21.    The Class Vehicles' sunroof drains suffer from defects in design, manufacturing,

21   and/or workmanship such that they are prone to leak water into the interior of the vehicle.

22      22.    The defective sunroof drains allow water to enter the passenger compartment

23   because the drain system is insufficient to allow adequate draining under ordinary use.

24      23.    The sunroof drain system common to all Class Vehicles is shown below in the

25   diagram of a 2003-2010 Cayenne.

26

CLASS ACTION COMPLAINT - 4



24.     The sunroof drains lead from the roof to the wheel wells, where they are designed to drain water onto the ground. When the drains fail, water enters the cabin.

25.     Porsche has known about this problem since at least 2019, when it issued warnings and instructions to its authorized dealers about fixing leaks from the sunroof.

26.     On March 11, 2019, Porsche issued Advanced Technical Information Bulletin 1903 ("ATIB 1903"), discussing "customer complaints of water leaking into the vehicle" in the 2005-2022 Porsche Cayenne and 2015-2022 Porsche Macan.

27.     ATIB 1903 identified potential causes of water entering vehicles, including failed external seals, improper drain connections, leaking hoses, and clogged drains.

28.     Notably, ATIB 1903 did not include a solution or fix for the water intrusion problem. Rather under "Product Solution," it stated "[a]n investigation is currently ongoing regarding the sealing of the large roof frame for the Macan. This bulletin will be updated with relevant information when it is available."

29.     By the time Porsche issues an ATIB, it has already known of the problem, received various complaints, reports, and/or warranty claims about it, investigated the problem,

CLASS ACTION COMPLAINT - 5

1    strategized how to "fix" the problem, and how that "fix" should be communicated to dealers

2    and/or consumers.

3        30.    The issue date of an ATIB does not equate to Porsche's date of first knowledge

4    about the problem; it was aware of, conducted an analysis about, and attempted to develop a

5    response to the Defect well before issuing an ATIB.

6        31.    At all relevant times, Porsche had superior and exclusive knowledge of the

7    Defect and knew or should have known that the Defect was not known or reasonably

8    discoverable by Plaintiff and Class Members before their purchase or lease of the Class

9    Vehicles.

10       32.    Porsche attempts to blame consumers for the results of the Defect and refuses to

11   cover water damage caused by the Defect:

> It is normal for debris to collect at the base of the windshield and where the
> cabriolet roof joins the body of your Porsche vehicle, as well as around the
> sunroof opening. It is extremely important that you have the drains for the
> sunroof, cabriolet roof, and vehicle front cowl body drains (as applicable based
> upon your Porsche model) cleaned at least annually, and more often if they begin
> to become clogged with debris. If you often park your vehicle outside or drive
> where there are many trees, more frequent cleaning will be required. Failure to
> keep sunroof, cabriolet roof, and front cowl body drains clean could result in
> significant damage, including but not limited to water ingress, the repair of which
> would not be covered by your Porsche New Vehicle Limited Warranty. Please see
> your authorized Porsche dealer for details about having this work performed.

       33.    The language above fails to explain that Porsche's actions in design,

manufacturing, and/or workmanship of the sunroof drain system are responsible for damage

caused by the Defect. "Parking their vehicle outside" or "driv[ing] where there are many trees"

are both reasonable and common use of Class Vehicles. It is not normal for the interior of cars

to flood. Moreover, consumers have reported leaking caused by the Defect shortly after

purchasing their cars or after cleaning the sunroof drain system; the problem is not the result of

"clogging."

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

34.     Porsche cannot shift the burden to design a car that does not leak to Plaintiff and Class Members.

35.     In essence, Porsche tries to blame the effects of the Defect on owner maintenance while concealing and omitting the true nature of water intrusion: the existence of the Defect.

36.     Porsche is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Porsche conducts tests, including pre-sale and post-sale durability testing, on vehicle components such as the sunroofs in Class Vehicles, to verify the parts are free from defects and align with Porsche's specifications. Further, pre-production and post-production testing on vehicles and their components is designed to be harsher than expected "real-world" driving experiences of consumers. Such testing necessarily includes examining the sunroofs. Thus, Porsche knew or should have known that the sunroofs in the Class Vehicles were defective and prone to leaking.

37.     Porsche should have learned of this widespread Defect from the sheer number of reports it received from dealerships and from customer complaints made directly to it. Porsche's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

38.     Porsche's warranty department analyzes and collects data submitted by its dealerships to identify trends in its vehicles. It is Porsche's policy that when a repair is made under warranty, the dealership must provide Porsche with detailed documentation of the problem and the repair employed to correct it in order to be reimbursed. Dealerships have an incentive to provide detailed information to Porsche, because they will not be reimbursed for any repairs unless the justification is sufficiently detailed.

CLASS ACTION COMPLAINT - 7

1    39.    Ms. Washburn owns a 2019 Porsche Macan, which she purchased as a Porsche

2    Approved Certified Pre-Owned Vehicle on June 20, 2020.

3    40.    On June 10, 2022, after a rainstorm, the sunroof drain system on Ms.

4    Washburn's Macan failed and water piled up in the rear passenger footwell. The water soaked

5    through to the carpet in the front footwells. Mold formed, leaving a musty odor.

6    41.    She took her Macan to a detail shop, which removed approximately 6 cups of

7    water from her interior, then cleaned and dried the carpet. That service cost Ms. Washburn

8    $235. Following the detailing, water continued to leak into her vehicle. She placed a beach

9    towel in the back passenger footwell to soak up water, which was completely soaked within 12

10   hours. Ms. Washburn replaced the towel every 12 hours over the weekend until she was able to

11   bring her car to the dealership for repair.

12   42.    On June 13, Ms. Washburn took her vehicle to Porsche dealer Porsche Bellevue

13   for repair. Porsche Bellevue informed her that sunroof drain failure was a common problem

14   with Macans and that they see this all the time.

15   43.    Porsche Bellevue also told Ms. Washburn that Porsche did not have a fix for the

16   sunroof drain failure, and that it was unable to fix the root cause of the water intrusion in her

17   car. This statement is consistent with ATIB 1903.

18   44.    Porsche Bellevue modified the exit of the drain tube on Ms. Washburn's Macan,

19   making it slightly wider, though it stressed that this was not approved as a fix by Porsche.

20   45.    Over the course of three weeks, Porsche Bellevue replaced the carpet and the

21   stereo subwoofer, both of which were damaged by the water intrusion.

22   46.    The photo below shows water in the footwell of Ms. Washburn's Macan:

23

24

25

26

CLASS ACTION COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992



47.    The next photo shows that there was sufficient water to saturate the carpet:



48.    The final photo shows mold forming in her Macan's carpet:



CLASS ACTION COMPLAINT - 9

1   49.    Ms. Washburn's experience was not unique. Porsche owners across the country report

2   the same problem and have been fed the company line from Porsche that the problem is

3   clogged drains without being informed of the Defect:

4           This is my first post since I've just had the car about 2 weeks  . . . Big rain
            today in New England - I go to my car and noticed a wet spot in the
5           passenger seat (just a small area). The roof was not left tilted open. It
            appears to be dripping through the visor area. Naturally I will be taking this
6           into the dealership - but wondered if this issue has come up before. I did
            notice there were some instances of the issue mentioned on Reddit.[1]
7

8           . . .

9           After 3 days at the dealer for a problem with our parking assist (turning on
            randomly, unable to turn off, honking as we approach cars), we were told
10          that the sunroof drain was clogged and had damaged the parking assist
            control panel. The car is barely 1 year old and we were told this was not
11          covered by warranty. We were also told Porsche recommends annual
            flushing of the line--though we were never told this, nor was this part of the
12          service done when we brought the car in for its annual tune-up just 2 weeks
            ago. Repair cost? $1900. They also told me they have cars in with similar
13          problems with $20k of damage! Anyone hear of this? And now I don't trust
            the vehicle--I'm worried this will be a perpetual invisible problem. Did I buy
14          a lemon? Appreciate any thoughts.[2]
15

16          . . .

17          I took the car into my Porsche service center. They came back and said the
            drains were clogged and it caused the car to have water enter the vehicle and
18          cause damage. They sent me videos and a ~$3700 bill to fix it all. They're
            saying the fix is for them to put in a wider drain line when they replace my
19          currently clogged drain line.[3]
20

21          . . .

22

23   [1] https://www.macanforum.com/threads/panoramic-roof-leak-brand-new-2018-macan.165888/., Last accessed
     August 23, 2022.
24
     [2] https://www.macanforum.com/threads/panoramic-roof-leak-brand-new-2018-macan.165888/page-3. Last
25   accessed August 23, 2022.

26   [3] https://www.macanforum.com/threads/advice-for-on-ongoing-water-leak-2017-macan-gts.174071/. Last
     accessed August 23, 2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

> Hey all! Wondering if y'all could help me with a problem. I own a 2018 Porsche Macan, 1st owner, only 3000 miles. I parked my car in the rain and went inside. First time I parked it in the rain. When i came back to my car, there was a pool of water in the passenger footwell. Definitely shocked me.[4]

> . . .

> I have been battling a water leak in my 2014 Cayenne with a panoramic moonroof.[5]

> . . .

> Water leaking down side of console in the interior, close to where it meets the dash/infotainment area, into footwell area on both driver and passenger side?[6]

50.    The Defect poses substantial risks to the health and safety of consumers and passengers in the Class Vehicles. The accumulation of water in the interior of the Class Vehicles can lead to the formation of toxic mold.

51.    Additionally, owners have reported that water leaking into their vehicles because of the Defect interfered with electrical systems in their vehicles:

> Hoping someone can offer me some insight with my 2014 Cayenne. I purchased certified preowned in January of 2017. I live in Los Angeles and we don't have much weather....one day (March 2017) I was in a hurry and had to go through a "drive through" car wash. Immediately my sound system started acting strangely. Turns out the sunroof drain(s) were clogged and it burnt out my amplifier/subwoofer ($3,700). My car hadn't missed any services and had been constantly in and out of the dealership for other technical issues since purchasing. Porsche took care of it for me after a little bit of complaining even though they say it wasn't covered under warranty.

> Since then I have had weird things pop up with my bluetooth, sensors, and heat seaters not functioning properly 100% of the time. But every time I

---

[4] https://www.reddit.com/r/Porsche/comments/8eappv/2018_porsche_macan_water_leak/. Last accessed August 23, 2022.

[5] https://rennlist.com/forums/cayenne-958-2011-2018/1282538-2014-cayenne-water-leak-rear-passenger-roof.html#post17950752. Last accessed August 23, 2022.

[6] https://rennlist.com/forums/cayenne-958-2011-2018/1167753-water-leaking-down-side-of-console.html Last accessed August 23, 2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

take it in they say they can't find anything wrong. Maybe this could be water damage as well??

Fast forward to now....I am OCD about having my drains checked. Porsche only checks them about every two years during the full service, but I have mine checked every time I take it into the dealership (ends up being every month or so). Less than two months ago I had all of them cleared. We drove my car to Texas...it rained while my car was parked outside. The next day I turned it on and you could hear a ton of water sloshing around. The electrical that controls my AC/HEAT and seat heaters ended up damaged and nothing can be turned on. Another $3,300 of electrical damage. This time Porsche is being a little difficult about covering the damage, but honestly I am pretty concerned about the constant water damage in general. Could this possibly be normal? Can drains really become clogged in just two months?? And if so...how does Porsche only recommend having them checked every two years? Has anyone heard of anything like this before??[7]

52.    If water enters electronic systems, it could start a fire or impede safety functions.

53.    Porsche is unwilling or unable to honor its warranty obligations and repair, correct, or otherwise remediate the sunroof drain failure defect for Macan and Cayenne owners, despite its promise to do so in express warranties to consumers.

54.    Plaintiff, individually and on behalf of proposed classes of consumers who purchased or leased the Class Vehicles with the same or substantially similar sunroof defect in materials and workmanship, seek recovery for damages suffered as a result of Porsche's defective sunroofs.

## CLASS ACTION ALLEGATIONS

55.    Pursuant to Federal Rule of Civil Procedure 23, this action is brought individually by Plaintiff and on behalf of the following proposed Nationwide Class and State Subclass of similarly situated individuals:

---

[7] https://rennlist.com/forums/cayenne-958-2011-2018/1101001-drains-clogging-constantly-electrical-damage-2014-cayenne.html

CLASS ACTION COMPLAINT - 12

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

a.  <u>Nationwide Class</u>: All individuals in the United States who, during the maximum time allowed by law, purchased or leased 2005-2022 Porsche Cayenne or 2015-2022 Porsche Macan vehicles with sunroofs.

b.  <u>Washington Class</u>: All individuals in the state of Washington who, during the maximum time allowed by law, purchased or leased 2005-2022 Porsche Cayenne or 2015-2022 Porsche Macan vehicles with sunroofs.

56.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional State Sub-Classes under Rule 23(c)(5), or otherwise modified.

57.     Excluded from the proposed classes are Porsche, any affiliate, parent, or subsidiary of Porsche; any entity in which Porsche had a controlling interest; any officer, director, or employee of Porsche; any successor or assign of Porsche; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff; and anyone who purchased a Class Vehicle solely for the purpose of resale.

58.     Members of the proposed Classes are readily ascertainable because the Class definitions are based upon objective criteria.

59.     <u>Federal Rule of Civil Procedure 23(a)(1) - Numerosity</u>: The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are thousands of Class Vehicles and Class members nationwide. The precise number and identities of Nationwide Class and State Class members may be ascertained from Defendant' records and motor vehicle regulatory data. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

60.     <u>Federal Rule of Civil Procedure 23(a)(2) - Commonality</u>: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, without limitation, the following:

CLASS ACTION COMPLAINT - 13

a.    Whether the Class Vehicles have a Defect;

b.    Whether Defendant engaged in unfair and/or deceptive trade practices by failing to disclose the material fact that the Class Vehicles have the Defect;

c.    Whether Defendant engaged in unfair and/or deceptive trade practices by selling the Class Vehicles with a Defect;

d.    Whether Defendant knew or should have known about the Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiff and the Class;

e.    Whether Defendant owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles in order to sell Plaintiff and the Class a vehicle free of defects;

f.    Whether Defendant breached its duties to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

g.    Whether Defendant breached its duties to Plaintiff and the Class by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

h.    Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

i.    Whether Defendant's Class Vehicles fail to perform as warranted;

j.    Whether Defendant concealed material facts from its communications and disclosures to Plaintiff and the Class regarding the Defect in the Class Vehicles;

k.    Whether Defendant engaged in unfair or deceptive acts;

l.    Whether Plaintiff's and Class Members' Class Vehicles are worth less as a result of the Defect;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

m.  Whether Defendant's conduct was the proximate cause of Plaintiff's and Class Members' injuries;

n.  Whether, because of Defendant's conduct, Plaintiff and the Class have suffered damages and, if so, the appropriate amount thereof; and

o.  Whether Plaintiff and the Class are entitled to treble damages, punitive damages, or other relief.

61.  <u>Federal Rule of Civil Procedure 23(a)(3) - Typicality:</u> Plaintiff's claims are typical of the Class members' claims whom she seeks to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiff and each Class member purchased a Class Vehicle and were comparably injured through Defendant's wrongful conduct as described above. Plaintiff and the other Class members suffered damages as a direct and proximate result of the same wrongful practices by Defendant. Plaintiff's claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members. Plaintiff's claims are based on the same legal theories as the claims of the other Class members.

62.  <u>Federal Rule of Civil Procedure 23(a)(4) - Adequacy:</u> Plaintiff will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiff's interests do not conflict with the interests of the Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, including automobile defect litigation and other consumer protection litigation. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor her counsel has interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

63.  <u>Federal Rule of Civil Procedure 23(b)(2):</u> Defendant has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, for the Class as a whole.

CLASS ACTION COMPLAINT - 15

64.     <u>Federal Rule of Civil Procedure 23(b)(3) – Superiority</u>: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims individually against Defendant such that it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

65.     Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**EQUITABLE TOLLING**

66.     Defendant has known of the Defect based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, consumer complaints to Defendant's network of exclusive dealers, aggregate warranty, consumer complaints to dealers and online, and testing performed in response to consumer complaints. Defendant was aware (or should have been aware) of the Defect in the Class Vehicles.

67.     Despite this knowledge, Defendant did not disclose the issue and, in fact, concealed the prevalence of the problem. In so doing, Defendant has failed to warn consumers or initiate timely recalls.

68.     Defendant had a duty to disclose the Defect to consumers. Contrary to this duty, Porsche concealed the Defect by continuing to distribute and sell the Class Vehicles to Plaintiff and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or the Plaintiff and the Class members about the truth about the Class Vehicles.

CLASS ACTION COMPLAINT - 16

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

69.     Plaintiff and Class members could not independently discover the Defect using reasonable diligence.

70.     Had Plaintiff and Class Members known the truth, they would not have purchased or leased the Class Vehicles, or – if Defendant had disclosed the true nature of the Class Vehicles' Defect, Plaintiff and Class Members would have paid significantly less for the Class Vehicles.

71.     Accordingly, Defendant's fraudulent concealment of the Defect tolls the statute of limitations. Alternatively, Defendant is estopped from relying on the statute of limitations because of its concealment of the Defect and the statute of limitations is tolled by the discovery rule.

### FIRST CLAIM FOR RELIEF: FRAUD BY CONCEALMENT OR OMISSION COMMON LAW
### (ON BEHALF OF THE NATIONWIDE CLASS OR IN THE ALTERNATIVE STATE SUB-CLASSES)

72.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

73.     Plaintiff brings this claim individually and on behalf of the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among various states' laws of fraudulent concealment. Defendant is liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977). In the alternative, Plaintiff brings this claim on behalf of the Washington Sub-Classes.

74.     Defendant intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Defect with the intent to mislead Plaintiff and Class members. Defendant knew, or should have known, that the Defect in the Class Vehicles could cause substantial leaking in the Class Vehicles.

75.     A reasonable consumer would not have expected that the Class Vehicles contain the Defect. Defendant knew that reasonable consumers expect that their vehicle would be

CLASS ACTION COMPLAINT - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

secure from the elements and would not leak water into the body of the vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

76.    Defendant ensured that Plaintiff and the Class did not discover this information through concealing it and misrepresenting the adequacy of the Class Vehicles' sunroof system without disclosing the truth. Defendant intended for Plaintiff and the Class to rely on its omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

77.    Defendant had a duty to disclose the Defect because:

a.    Defendant had exclusive and superior knowledge and access to the facts about this hidden Defect. Defendant also knew that these technical facts were not known to or reasonably discoverable by Plaintiff and the Class members;

b.    Defendant knew the Defect was a material fact that would affect Plaintiff's or Class members' decisions to buy Class Vehicles; and

c.    Defendant made incomplete representations about the safety and reliability of the Class Vehicles and their sunroof drainage systems, while purposefully withholding material facts about a known defect. In uniform advertising and materials provided with each Class Vehicle, Defendant intentionally concealed, suppressed, and failed to disclose to Plaintiff and the Class that the Class Vehicles contained the Defect. Because it volunteered to provide information about the Class Vehicles that it offered for sale to Plaintiff and the Class, Defendant had the duty to disclose the whole truth. Defendant did not.

78.    To this day, Defendant has not made full and adequate disclosure, continues to defraud Plaintiff and the Class, and continues to conceal material information regarding the Defect. The omitted and concealed facts were material because a reasonable person would find

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased by Plaintiff and the Class.

79.    Defendant concealed or suppressed these material facts, in whole or in part, to maintain a market for its vehicles, to protect profits, and to avoid recalls that would hurt the brand's image and cost money. It did so at the expense of Plaintiff and the Class. Had they been aware of the Defect in the Class Vehicles, Plaintiff and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased them.

80.    Accordingly, Defendant is liable to Plaintiff and the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase.

81.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiff's and the Class's rights and well-being, and to enrich themselves.

**SECOND CLAIM FOR RELIEF: NEGLIGENT MISREPRESENTATION COMMON LAW**
**(ON BEHALF OF THE NATIONWIDE CLASS OR IN THE ALTERNATIVE WASHINGTON SUB-CLASS)**

82.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

83.    Plaintiff asserts this Negligent Misrepresentation count individually and on behalf of the Nationwide Class or, in the alternative, on behalf of the Washington Sub-Class.

84.    Defendant owed a duty to disclose the Defect to Plaintiff and Class members because Defendant knew or should have known of the Defect and the risks associated with the manifestation of the Defect.

85.    Defendant negligently misrepresented and omitted material facts, in owners' manuals, maintenance schedules, or elsewhere, concerning the standard, quality, or grade of the Class Vehicles and the existence of the Defect. Defendant misrepresented that it would remedy

CLASS ACTION COMPLAINT - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

any defects under the express warranties, which it has not done. As a direct result of Defendant's negligent conduct, Plaintiff and Class members have suffered actual damages.

86.    The Defect is material because it presents a substantial risk of damage to interior components of the vehicles, including damage to electrical systems. Moreover, the accumulation of water in the Class Vehicles can lead to the growth of toxic mold which poses various health and safety risks. No reasonable consumer expects a vehicle to contain a defect in design, such as the Defect, that would lead to water leaking into the interior of the vehicle.

87.    Plaintiff and Class members would not have purchased the Class Vehicles but for Defendant's negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Defect and corresponding risks or would have paid less for the Class Vehicles. Plaintiff and Class members justifiably relied upon Defendant's negligent false representations and omissions of material facts.

88.    As a direct and proximate result of Defendant's negligent false representations and omissions of material facts regarding the standard, quality, or grade of the Class Vehicles with the Defect, Plaintiff and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF: UNJUST ENRICHMENT**
**COMMON LAW**
**(ON BEHALF OF THE NATIONWIDE CLASS OR IN THE ALTERNATIVE**
**WASHINGTON SUB-CLASS)**

89.    Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein, except for the paragraphs regarding breach of express warranty and privity of contract. Plaintiff brings this Unjust Enrichment count in the alternative to the breach of warranty claims, and assert this count simultaneously at the pleading stage, given Plaintiff's allegations that the warranties at issue are unconscionable.

90.    Plaintiff asserts this Unjust Enrichment count individually and on behalf of the Nationwide Class or, in the alternative, on behalf of the Washington Sub-Class.

CLASS ACTION COMPLAINT - 20

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    91.    Because of its conduct, Defendant caused damages to Plaintiff and Class

2  members.

3    92.    Plaintiff and Class members conferred a benefit on the Defendant by overpaying

4  for Class Vehicles at prices that were artificially inflated by Defendant's concealment of the

5  Defect.

6    93.    As a result of Defendant's fraud and deception, Plaintiff and Class members

7  were not aware of the facts concerning the Class Vehicles and did not benefit from the

8  Defendant's misconduct.

9    94.    Defendant knowingly benefitted from its unjust conduct. It sold Class Vehicles

10  equipped with a Defect for more than what the vehicles were worth, at the expense of Plaintiff

11  and Class members.

12    95.    Defendant readily accepted and retained these benefits from Plaintiff and Class

13  members, to retain its reputation and avoid the necessary costs to rectify its unjust conduct.

14    96.    It is inequitable and unconscionable for Defendant to retain these benefits

15  because it misrepresented that the Class Vehicles were adequate for the normal uses of a

16  passenger vehicle, including protecting from the elements, and intentionally concealed,

17  suppressed, and failed to disclose the Defect to consumers. Defendant knowingly limited its

18  warranty coverage and excluded the Defect. Plaintiff and Class members would not have

19  purchased the Class Vehicles or paid less for them had Defendant not concealed the Defect.

20    97.    Plaintiff and Class members do not have an adequate remedy at law.

21    98.    Equity cannot in good conscience permit the Defendant to retain the benefits

22  that it derived from Plaintiff and Class members through unjust and unlawful acts, and

23  therefore restitution or disgorgement of the amount of the Defendant's unjust enrichment is

24  necessary.

25

26

CLASS ACTION COMPLAINT - 21

**FOURTH CLAIM FOR RELIEF: VIOLATION OF THE WASHINGTON CONSUMER**
**PROTECTION ACT ("WCPA")**
**WASH. REV. CODE ANN. § 19.86.010, ET SEQ.**
**(ON BEHALF OF THE**
**WASHINGTON SUB-CLASS)**

99.     Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

100.    Plaintiff brings this claim individually and on behalf of the Washington Sub-Class against Defendant on behalf of purchasers of the Class Vehicles.

101.    Defendant and members of the Washington Sub-Class are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

102.    Defendant engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

103.    The WCPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

104.    Specifically, by failing to disclose and actively concealing the existence and risk posed by the Class Vehicles and the Defect, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Wash. Rev. Code § 19.86.020.

105.    Defendant's misrepresentations and fraudulent omissions were material to Plaintiff and members of the Washington Sub-Class. When Plaintiff and members of the Washington Sub-Class purchased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' roof drainage systems were free from latent defects. Had Defendant disclosed that the roof drainage systems may fail and cause substantial interior leaking, Plaintiff and members of the Washington Sub-Class would not have purchased the Class Vehicles, or would have paid less for their vehicles.

CLASS ACTION COMPLAINT - 22

106.    Defendant knowingly concealed, suppressed, and/or omitted the existence of the Defect and risk in the Class Vehicles at the time of sale and at all relevant times thereafter.

107.    Defendant unlawfully transferred the costs of repair or replacement to Plaintiff and members of the Washington Sub-Class.

108.    Defendant owed a duty to disclose the Defect and its corresponding risk to Plaintiff and members of the Washington Sub-Class because Defendant possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Defect. Rather than disclose the Defect, Defendant intentionally concealed the Defect with the intent to mislead Plaintiff and members of the Washington Sub-Class to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the sunroof drainage systems and any interior components of the Class Vehicles damages by the Defect to Plaintiff and members of the Washington Sub-Class.

109.    Defendant also knew, or should have known, that the Defect in the Class Vehicles could cause substantial interior water leaking.

110.    Had Plaintiff and members of the Washington Sub-Class known about the Defect at the time of purchase, they would not have bought the Class Vehicles or would have paid much less for them.

111.    As a direct and proximate result of Defendant's wrongful conduct in violation of the WCPA, Plaintiff and members of the Washington Sub-Class have suffered and continue to suffer harm by the threat of continued leaking of their sunroofs, and damages to be determined at trial. Plaintiff and members of the Washington Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles. Accordingly, Plaintiff and Class Members' suffered injury to their property—their Class Vehicles—which are not suitable for use and have diminished in value because of the Defect. They have also suffered losses resulting from Defendant's unfair and/or deceptive practices.

CLASS ACTION COMPLAINT - 23

112.    Pursuant to Wash. Rev. Code § 19.86.090, the Washington State Class seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the WCPA. Because Defendant's actions were willful and knowing, Washington State Class members' damages should be trebled as provided by statute.

**FIFTH CLAIM FOR RELIEF: BREACH OF EXPRESS WARRANTY**
**(ON BEHALF OF THE NATIONWIDE CLASS AND**
**WASHINGTON SUB-CLASS)**

113.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

114.    Plaintiff brings this claim individually and on behalf of the Nationwide Class and the Washington Sub-Class against Defendant.

115.    Defendant provided Plaintiff and members of the Nationwide Class and Washington Sub-Class with one or more express warranties in connection with the purchase of Class Vehicles. Under the warranties provided to Plaintiff and the Nationwide Class and Washington Sub-Class, Defendant promised to repair or replace covered defective components, at no cost to owners of the Class Vehicles. As alleged herein, Defendant breached these warranties because it was unable to remedy the Defect.

116.    Defendant marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Defect and its corresponding safety risk from Plaintiff and members of the Nationwide Class and Washington Sub-Class.

117.    Plaintiff and members of the Nationwide Class and Washington Sub-Class have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Nationwide Class and Washington Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

party beneficiaries of contracts between Defendant and its dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers of the Class Vehicles only.

118.    Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and members of the Nationwide Class and Washington Sub-Class purchased their Class Vehicles. Given that the nature of the Defect is by design, the warranties are substantively unconscionable because Defendant knew that the roof drainage systems were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Defect.

119.    Plaintiff and members of the Nationwide Class and Washington Sub-Class were induced to purchase the Class Vehicles under false and fraudulent pretenses. Despite the existence of the warranties, Defendant failed adequately to inform Plaintiff and members of the Nationwide Class and Washington Sub-Class that the Class Vehicles contained the Defect, and Defendant has failed to provide a suitable repair or replacement free of charge within a reasonable time.

120.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, any exclusion of design defects that unfairly favored Defendant particularly where the Defect was known only to Defendant and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), and absence of effective warranty competition.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

121.    The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Nationwide Class and Washington Sub-Class. Among other things, Plaintiff and members of the Nationwide Class and Washington Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Class, and Defendant knew or should have known that the Class Vehicles were defective at the time of sale.

122.    Defendant was provided notice of the Defect through its own testing, and by numerous consumer complaints made to its authorized dealers nationwide. Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant has known of and concealed the Defect and has failed to provide a suitable repair or replacement free of charge within a reasonable time.

123.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Nationwide Class and Washington Sub-Class have been damaged in an amount to be determined at trial.

124.    In the alternative, should Defendant claim that the Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Nationwide Class and Washington Sub-Class whole because, on information and belief, Defendant has failed and has refused to provide the promised remedies adequately and within a reasonable time.

**SIXTH CLAIM FOR RELIEF: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(ON BEHALF OF THE NATIONWIDE CLASS AND WASHINGTON SUB-CLASS)**

125.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

CLASS ACTION COMPLAINT - 26

126.    Plaintiff brings this claim on behalf of herself, the Nationwide Class, and the Washington Sub-Class against Defendant on behalf of purchasers of the Class Vehicles.

127.    Plaintiff and members of the Nationwide Class and Washington Sub-Class purchased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

128.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law.

129.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation without exposure to the elements. The Class Vehicles contain an inherent defect—the Defect—(at the time of sale and thereafter) and present an undisclosed safety risk of water intrusion and leaking. Thus, Defendant breached its implied warranty of merchantability.

130.    Defendant cannot disclaim its implied warranty as it knowingly sold a defective product.

131.    Plaintiff and members of the Nationwide Class and Washington Sub-Class have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Nationwide Class and Washington Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendant and its dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. Further, Plaintiff and Class Members, as the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1    current owners of the Class Vehicles, were the intended third-party beneficiaries of contracts

2    between Defendant and the initial dealership(s) that sold their Class Vehicles.

3        132.    Defendant was provided notice of the Defect through its own testing, and by

4    numerous consumer complaints made to its authorized dealers nationwide.

5        133.    Affording Defendant an opportunity to cure its breach of the warranties would

6    be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendant knew,

7    should have known, or were reckless in not knowing of its misrepresentations and omissions

8    concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to

9    rectify the situation and/or disclose the defective design. Under the circumstances, the remedies

10    available under any informal settlement procedure would be inadequate and any requirement

11    that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendant a

12    reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

13        134.    As a direct and proximate result of Defendant's breach of the implied warranty

14    of merchantability, Plaintiff and members of the Nationwide Class and Washington Sub-Class

15    have been damaged in an amount to be proven at trial.

16        135.    Any attempt by Defendant to disclaim or limit the implied warranty of

17    merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically,

18    any limitation on Defendant's warranty is unenforceable because it knowingly sold a defective

19    product without informing consumers about the Defect. Any applicable time limits contained in

20    Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and

21    members of the Nationwide Class and Washington Sub-Class. Among other things, Plaintiff

22    and members of the Nationwide Class and Washington Sub-Class did not determine these

23    limitations, the terms of which unreasonably favored Defendant. A gross disparity in

24    bargaining power existed between Defendant and members of the Nationwide Class and

25    Washington Sub-Class, and Defendant knew or should have known that the Class Vehicles

26    were defective at the time of sale and that the Defect posed a safety risk.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    136.    Plaintiff and members of the Nationwide Class and Washington Sub-Class have

2    been excused from performance of any warranty obligations because of Defendant's conduct

3    described herein.

4    137.    The applicable statute of limitations for the implied warranty claim has been

5    tolled by the discovery rule and/or fraudulent concealment.

6                              **PRAYER FOR RELIEF**

7    Therefore, Plaintiff seeks judgment against Porsche and requests relief as follows:

8        a.    An Order certifying this case as a Class Action;

9        b.    An Order appointing Plaintiff as Class Representative of the proposed Classes;

10       c.    An Order appointing Plaintiff's counsel as Class Counsel;

11       d.    Award damages and other relief under statutory and/or common law;

12       e.    Award Attorneys' fees and costs;

13       f.    Award pre- and post-judgment interest;

14       g.    Award declaratory, injunctive, and equitable relief;

15       h.    Allow Plaintiff and the Classes to conform the pleadings to evidence produced

16            at trial; and

17       i.    Grant such other relief as is just and proper.

18                              **JURY DEMAND**

19    Plaintiff, individually and on behalf of the proposed Classes, hereby demands a trial by

20    jury as to all matters so triable.

21    \\\

22    \\\

23    \\\

24    \\\

25    \\\

26    \\\

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    DATED this 1st day of September, 2022.

2                                    TOUSLEY BRAIN STEPHENS PLLC

3

4                                    By:  *s/Kim D. Stephens, P.S.*
                                          Kim D. Stephens, P.S., WSBA #11984
5                                         kstephens@tousley.com
                                          Jason T. Dennett, WSBA #30686
6                                         jdennett@tousley.com
                                          Rebecca L. Solomon, WSBA #51520
7                                         rsolomon@tousley.com
                                          1200 Fifth Avenue, Suite 1700
8                                         Seattle, Washington  98101
                                          Telephone:  206.682.5600/Fax: 206.682.2992

9                                    ***Attorneys for Plaintiff Amanda Washburn and the
10                                   Putative Classes***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 30