The Honorable Tana Lin

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMANDA WASHBURN,

             Plaintiff,

    v.

PORSCHE CARS NORTH AMERICA INC., a
Delaware Corporation,

             Defendant.

NO. 2:22-cv-01233-TL

**PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

**NOTE ON MOTION CALENDAR:
March 27, 2025**

## I.      INTRODUCTION

As of the date of this Motion, out of the 551,921 names on the Settlement Class List, only 21 have opted out of the settlement and 2 have objected. The proposed settlement, which provides for a warranty extension, reimbursement of certain out-of-pocket expenses for the cost of a prior-paid Covered Repair, and expanded service benefits, represents a strong outcome for Settlement Class Members commensurate with the alleged damages sustained. Reached through arm's length negotiations after contested litigation by experienced and well-informed counsel, the Settlement will deliver tangible benefits to Settlement Class Members, addressing the alleged defects in Defendant's subject vehicles' Sunroofs that caused leaks resulting in damage to the vehicles' interiors without protracted and inherently risky litigation.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 1
2:22-cv-01233-TL

Plaintiff, by and through her undersigned counsel, respectfully requests this Court grant Plaintiff's Motion for Final Approval of this Class Action Settlement. Because the proposed Settlement is fair, reasonable, and adequate, and because it satisfies all the requirements of Rule 23, the Court should finally certify the Settlement Class and grant final approval.

## II.    STATEMENT OF FACTS

### A.    Factual Background

This case arises out of Plaintiff's allegations that 2015-2023 model year Porsche Cayenne and Macan vehicles, and 2014-2023 model year Panamera vehicles, equipped with a Sunroof and imported by PCNA for sale or lease by authorized Porsche-brand dealers in the United States were prone to leakage and water ingress into the vehicles' interiors from the Sunroof (the "Settlement Class Vehicles"). The resulting leaks caused damage to the vehicles' interiors, including, among other things, their electrical systems, audio systems, upholstery, carpets, roof headliners, and seats.

PCNA denies each and all of the claims and contentions alleged, or which could be alleged, against it in this litigation and denies all wrongdoing or liability.

### B.    Procedural History, Discovery, and Settlement Negotiations

On September 1, 2022, Plaintiff filed a Class Action Complaint against PCNA individually and on behalf of all others similarly situated. On November 10, 2022, PCNA moved to dismiss the Complaint and also filed a motion for a more definite statement. On September 12, 2023, the Court granted the motion for a more definite statement and denied the motion to dismiss as premature. Plaintiff subsequently filed an Amended Class Action Complaint on September 23, 2023. Plaintiff filed a Second Amended Class Action Complaint on March 11, 2024, which asserted the same claims as the prior Complaint, but expanded the definition of the class based on investigation of the alleged defect.

Subsequently, the parties Plaintiff and PCNA (collectively, the "Parties") were able to reach a settlement through extensive arms-length negotiations over the course of approximately

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 2
2:22-cv-01233-TL

6 months, including numerous exchanges of information and settlement proposals. This settlement was formalized in the Settlement Agreement, which was presented to this Court in Plaintiff's Motion for Preliminary Approval, filed April 24, 2024 and granted by the Court on May 5, 2024. The schedule set for in the Court's Order Granting Preliminary Approval was modified twice to postpone the deadline for Notice to be mailed in accordance with the notice plan in order to receive Pennsylvania VIN Data from the Pennsylvania Department of Transportation. *See* Dkts. 44, 48. The Notice Plan approved by the Court, and last modified by Order Granting Motion to Further Modify Preliminary Approval of Class Action Settlement, has been carried out and the response of the Class has been favorable.

### III.    THE SETTLEMENT TERMS

The following section briefly summarizes the core terms of the Settlement, which Plaintiff previously filed with the Court, Dkt. No. 40-1.

The Settlement Class is defined as:

All persons and entities who purchased or leased a Settlement Class Vehicle … in the United States.[1]

S.A. § I.V.

The benefits available to Settlement Class Members included, among other things, a warranty extension, reimbursement of certain out-of-pocket expenses for the cost of the prior-paid Covered Repair, and expanded service benefits.

<u>Warranty Extension Benefits</u>

As part of the Settlement, Settlement Class Members were entitled to an extension of its New Car Limited Warranty ("NCLW"), which is applicable to the Settlement Class Vehicles, to

---

[1] "Settlement Class Vehicles" are defined as "2015-2023 model year Cayenne and Macan vehicles, and 2014-2023 model year Panamera vehicles, equipped with a Sunroof, which were imported by PCNA for sale or lease by authorized Porsche dealers in the United States." S.A. § I.X.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

cover a percentage of the cost of a Covered Repair[2] by an authorized Porsche dealer during a period of up to six (6) years or eighty thousand (80,000) miles (whichever occurs first) from the vehicle's In-Service Date. *Id.* at § II.A. The Warranty Extension's coverage percentage was determined by a "sliding scale" of coverage percentage based on the age and mileage of the Class Vehicle at the time of the Covered Repair as detailed in Table I of the Settlement Agreement. *See id.*

Reimbursement Benefits

The Settlement also provided class members reimbursement of a percentage of certain out-of-pocket expenses paid for a past Covered Repair that was performed prior to the Notice Date. *See id*. at §II.B. The percentage of reimbursement is determined by the same "sliding scale" of coverage percentages that are set forth in Table I of the Settlement Agreement.

Sunroof Cleaning

The Settlement Agreement also provides Settlement Class Members with an annual sunroof drain cleaning program. *See id.* at § II.C. Under the program, Settlement Class Members are able to present a Settlement Class Vehicle to a Porsche-authorized dealer in the United States once per calendar year for a free sunroof drain cleaning for a period of 9-years or 90,000-miles from the Settlement Class Vehicle's In-Service Date, whichever occurs first. *See id*.

## IV.    NOTICE TO THE CLASS

As directed by this Court's Preliminary Approval Order, the parties worked diligently to implement the Notice Plan in coordination with the approved Claims Administrator, Angeion Group ("Settlement Administrator" or "Angeion"). Using records provided by the Defendant,

---

[2] A Covered Repair is defined as "repair or replacement (parts and labor) of (a) the Sunroof of a Class Vehicle to address a condition diagnosed by an authorized Porsche dealer (or, if attested to in an affidavit as provided in II.B.2. [of the Settlement Agreement], a repair or service center that is not an authorized Porsche dealer) of leakage or liquid ingress into the vehicle's interior from the Sunroof while it was in the fully closed position with the Sunroof glass not broken, cracked or otherwise damaged, and, if applicable, (b) to address a condition diagnosed by an authorized Porsche dealer (or, if attested to in an affidavit as provided in II.B.2. [of the Settlement Agreement], a repair or service center that is not an authorized Porsche dealer) of liquid damage to a Class Vehicle's interior seats, carpets/floor mats, interior ceiling, and/or failure of electrical components, directly caused by a diagnosed condition of leakage or liquid ingress into the vehicle's interior from said vehicle's Sunroof while it was in the fully closed position with the Sunroof glass not broken, cracked or otherwise damaged." *Id.* at § I.J.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

PCNA, Angeion fully implemented the comprehensive notice program consisting of direct-mail Short Form Notices, a website, and a toll-free phone number. As detailed below in the Declaration of H Jacob Hack of Angeion Regarding Implementation of Notice Plan ("Admin. Decl."), submitted herewith, that Notice Plan is now complete, and the results are successful.

**A.    Direct Mail**

On May 13, 2024, PCNA provided Angeion with a data file containing 347,484 unique Vehicle Identification Number ("VIN") records that corresponded to the Settlement Class Vehicles. *Id.* ¶ 6. Pursuant to the terms of the Settlement Agreement and the Preliminary Approval Order, Angeion coordinated with IHS Markit/Polk ("IHS") to obtain the names and mailing addresses associated with the Settlement Class Vehicle VINS from the state Departments of Motor Vehicles. *Id.* ¶ 7. The names and addresses returned by IHS included present and former owners as well as lessees of the Settlement Class Vehicles. *Id.* Angeion reviewed and analyzed the records provided, and identified 551,921 unique potential Settlement Class Members (the "Class List"). On November 6, 2024, the Short Form Notice was mailed via the United States Postal Service first class mail, postage prepaid, to 550,898 Settlement Class Members on the Class List. *Id.* ¶9. That same day, the remaining Settlement Class Members were mailed Short Form Letters[3] via the USPS first class mail, postage prepaid, as well. *Id.* ¶10. Notices that were returned by the USPS as undeliverable with a forwarding address were re-mailed to that forwarding address and those returned by the USPS without a forwarding address were subjected to an address verification search ("skip trace") in an attempt to locate an updated address. *Id.* ¶12.

In summary, Short Form Notices reached 545,702 of the 551,921 persons to whom the Short Form Notice was mailed or emailed, which equates to a reach rate of the direct notice of

---

[3] Included in the 551,921 Settlement Class Member records returned by IHS were 118 mailing addresses that corresponded to 1,023 Settlement Class Member names. *Id.* ¶¶7-8. For purposes of efficiency, Class Counsel and Defense Counsel agreed that a letter ("Short Form Letter") be sent to the 118 mailing addresses representing the 1,023 Settlement Class Members. *Id.* The Short Form Letters contain the same information as the Short Form Notice. *Id.* ¶8.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 5
2:22-cv-01233-TL

approximately 98.87%. *Id.* ¶13. This reach rate meets and exceeds the requirement of Rule 23. *Id.*

**B.    Settlement Website**

On November 6, 2024, Angeion activated the following case-specific Settlement Website, www.SunroofDrainSettlement.com, where Settlement Class Members can download and print the Claim Form to be completed and mailed to the Claim Administrator. *Id.* ¶14. Among other information, the Settlement Website contains (1) instructions on how to submit a Claim for reimbursement by mail; (2) instructions on how to contact the Claim Administrator, Defense Counsel, and/or Class Counsel for assistance; (3) answers to Frequently Asked Questions regarding the Settlement; (4) copies of the Claim Form, Long Form Notice, Class Settlement Agreement, the Amended Order Granting Preliminary Approval of Class Action Settlement, and (5) other pertinent orders and documents. *Id.* The Settlement Website received 38,402 website visits by 30,320 unique users totaling 53,834 page views. *Id.*

**C.    Toll-Free Phone Number**

On November 6, 2024, Angeion activated the following toll-free number dedicated to this Settlement: 1-877-873-3330. *Id.* ¶15. The toll-free hotline utilized an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. *Id.* This hotline was accessible 24 hours a day, 7 days a week and received 2,767 calls totaling 12,869 minutes. *Id.*

**V.    CLAIMS, OPT OUTS, AND OBJECTIONS**

The reaction of the Settlement Class has been positive. The deadline to submit a claim was February 4, 2025, and to date the claims administrator has received 1,389 claims. *Id.* ¶16. The deadline to submit a request for exclusion or objection was January 5, 2025 and 21 Settlement Class members have submitted valid exclusion requests, and only 2 class members have objected. *Id.* ¶¶17-18.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 6
2:22-cv-01233-TL

1

## VI.    LEGAL ARGUMENT

Plaintiff respectfully requests that the Court grant final certification of the Settlement Class because: (1) the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3); (2) the Court-approved notice program satisfies both Rule 23 and due process requirements and has been fully implemented pursuant to the Court's requirements; and (3) the Settlement is fair, reasonable, and adequate.

### A.    The Settlement Class Continues to Merit Certification

A threshold inquiry at final approval is whether the Class satisfies the requirements of Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). The Court completed this first step in the settlement approval process when it granted preliminary approval and provisionally certified the Settlement Class. *See* Dkt. No. 41. The Court has already found that the Rule 23 requirements for certification of the Settlement Class exist. *Id.* ¶ 7. Specifically, the Court found on its Order Granting Preliminary Approval that the Settlement Class met the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. *Id.* Likewise, the Court found that the Settlement Class met each of the Rule 23(b)(3) requirements: that questions of law and fact common to the members of the class predominate over any questions affecting any individual Class Member, and that "a class action is superior to all other available methods for the fair and efficient adjudication of the controversy." *Id.* Plaintiff respectfully submits that nothing has changed since these findings were made, and they remain accurate. Because no relevant facts have changed since the Court certified the Settlement Class the Court need not revisit class certification here. *See, e.g.*, *Scientific Games*, No. 18-cv-525, Dkt. #197 (W.D. Wash. Aug. 12, 2022); *Aikens v. Panatte, LLC*, No. 2:17-cv-01519, Dkt. #54 (W.D. Wash. Feb. 5, 2019); *Ewing v. Admin. Sys., Inc.*, C08-0797 RAJ, 2009 WL 10725426, at *1 (W.D. Wash. Sept. 30, 2009); *see also Jamil v. Workforce Res., LLC*, 2020 WL 6544660, at *3 (S.D. Cal. Nov. 5, 2020).

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 7
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**B.      Notice Satisfied Due Process**

Prior to granting final approval, this Court must consider whether the members of the class received adequate notice of the settlement. Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Specifically, the court must find that the notice to the class was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "[T]he rule does not insist on actual notice to all class members in all cases." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70% of a class is often reasonable and satisfies due process. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* 3 (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The Court already provisionally approved the Notice Plan proposed by Plaintiff and Class Counsel, including the forms of Plaintiff's Short Form Notice and Long Form Notice, finding that they complied with the requirements of Rule 23 and due process. The Court also approved of Plaintiff's proposed manner of distribution of notice forms as compliant with the requirements of Rule 23 and due process.

Plaintiff's implementation of that Notice Plan was successful in all aspects. Consistent with the Court's instructions, Notice consisted of 551,921 Short Form Notices mailed, a website, and a toll-free phone number. The Notice Program as designed and implemented reached approximately 98.87% of the identified Settlement Class. Admin. Decl. ¶ 13. That figure exceeds the constitutional due process requirement in this Circuit. *See, e.g.*, *Askar v. Health Providers Choice, Inc.*, No. 19-CV-06125-BLF, 2021 WL 4846955, at *3 (N.D. Cal. Oct. 18, 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.") (citation omitted). Finally, all forms of notice accurately described the Settlement and directed the recipient to the Settlement Website where further information was available. The Court should therefore find that the

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 8
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Notice Plan, as executed, satisfied Rule 23(c)(2)(B) and fully complied with due process

2    requirements.

3    **C.      The Settlement Should be Finally Approved Pursuant to Rule 23(e)**

4            To approve the settlement of a class action as fair, reasonable, and adequate, Rule 23(e)(2)

5    requires the Court to consider "whether (A) the class representatives and class counsel have

6    adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief

7    provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

8    appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the

9    method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

10   including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);

11   and (D) the proposal treats class members equitably relative to each other." At the final approval

12   stage, the court considers the settlement in light of a non-exhaustive list of factors—the so-called

13   *Churchill* factors—including:

14           (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
             duration of further litigation; (3) the risk of maintaining class action status throughout
15           the trial; (4) the amount offered in settlement; (5) the extent of discovery completed
             and the stage of the proceedings; (6) the experience and views of counsel; (7) the
16           presence of a governmental participant; and (8) the reaction of the class members of
             the proposed settlement.
17
     *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanson v. MGM*
18
     *Resorts Int'l*, No. 16-cv-1661-RAJ, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018). Not
19
     surprisingly, there is overlap between the 23(e) fairness, reasonableness, and adequacy considerations
20
     and the factors set out in the Ninth Circuit test in *Churchill*, 361 F.3d at 575. The Ninth Circuit has
21
     instructed that the court's 23(e)(2) analysis should be guided by the *Churchill* factors. *See Kim v.*
22
     *Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,
23
     946 (9th Cir. 2011).
24

25   **D.      Class Counsel and the Class Representatives Have Adequately Represented the
             Class and Support the Settlement**

26           Plaintiff and Class Counsel have represented the Class adequately in connection with

both the litigation and the Settlement. Plaintiff has claims that are typical of, and coextensive with, those of the Class, and they have no interests that are antagonistic to other members of the Class. *See Hanlon*, 150 F.3d at 1020. Indeed, Plaintiff's interests are coextensive with those of the Settlement Class, and Plaintiff has actively participated in the investigation of her case and has been in constant communication with her attorneys over the course of the litigation in an effort to fully represent the interests of the entire Settlement Class. Class Counsel diligently represented the Class throughout the course of this complex and hard-fought litigation. Class Counsel, who has a proven track record in the prosecution of complex class actions nationwide, has spent more than two years litigating this case and advocating for the Class. As a result of their efforts, the Settlement provides a substantial and meaningful result for participating Settlement Class members. By any measure, Class Counsel's efforts constitute adequate representation of the Class.

**E.    The Settlement Has No Indicia of Collusion and is the Result of Hard-Fought Negotiations**

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). When approving a settlement prior to class certification the Court is required to engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946.

The Settlement was the product of extensive, arm's length negotiations conducted by experienced counsel for both Parties. The Parties undertook serious, informed, and arm's-length negotiations over nearly six months-including multiple negotiation sessions via video conference and telephone. *See* Dkt. 39, p. 18.  These detailed, technical, and evidence-based discussions culminated in the proposed Settlement now before the Court. *See* Fed. R. Civ. P. 23(e)(2)(B). The Parties'

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 10
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

negotiations were also well-informed and reached by adversarial parties – PCNA provided discovery regarding the number of warranty claims related to the alleged defect and its root cause analysis, the Parties obtained materials and information through their own independent investigatory efforts, and engaged in substantial briefing in connection with PCNA's motion to dismiss. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.Liab. Litig.*, No. MDL 2672, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations.").

Finally, the Settlement here has none of the indicia of possible collusion identified by the Ninth Circuit, such as a disproportionate requested attorneys' fee, a "clear sailing" fee agreement separate and apart from class funds, or the reversion of unpaid fees to the defendant. *See In re Bluetooth*, 654 F.3d at 947. Class Counsel's fee will be determined separately, as explained in Class Counsel's fee petition, and the requested fee is reasonable under the lodestar method and considering the benefits negotiated for the Class. *See* Dkt. 49 (Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, and Service Award). Class Counsel's requested fee is also a fee amount that is consistent with Washington law and Ninth Circuit precedent, reflects their work performed, and is proportionate to the benefits secured for the Class. *Id.*  Accordingly, all evidence indicates that this Settlement was not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann II*, 314 F.R.D. at 324–25.

**F.    The Relief Provided in the Settlement is Fair and Adequate in Light of the Risk and Complexity of the Case.**

In Plaintiff's Motion for Preliminary Approval, Plaintiff provided an in-depth discussion regarding the fairness and adequacy of the Settlement. *See* Dkt. 39. In granting preliminary approval to the Settlement, this Court agreed, holding that the relief provided to the class under the settlement is adequate, particularly when considering the costs, risks, and delay associated with proceeding to

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 11
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   trial and potential appeal. *See* Dkt. 41 ¶ 8. Here evaluating the risks of continued litigation against
2   the scope of relief this Settlement provides to the Class, the Settlement merits final approval, as well.

3       **1.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation.**

4           This Settlement is excellent not only because of the valuable benefits obtained for the
5   Settlement Class, but also because Plaintiff would have faced significant risks in litigating this case
6   through trial. Although nearly all class actions involve a high level of risk, expense, and complexity—
7   undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska*
8   *P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this action involved the complex hurdle of Plaintiff
9   showing that all Class Vehicles were sold with a common defect that renders them prone to
10  sunroof leaking. The complexity of the issues Class Counsel faced in this litigation is also
11  exemplified by the hurdles Class Counsel faced in litigation, including Defendant's motion to
12  dismiss the Complaint and motion for a more definite statement. *See* Dkt. No. 11. PCNA's
13  motion to dismiss sought dismissal of Plaintiff's claims on numerous grounds, including failure
14  to state valid claims for relief, failure to satisfy Rule 8(a) and Rule 9(b) of the Federal Rules of
15  Civil Procedure, and for a lack of entitlement to equitable relief. *See id.*

16          Each of these hurdles posed a risk that Settlement Class Members could end up losing the
17  case at or before trial and recovering nothing at all. Generally, "unless the settlement is clearly
18  inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with
19  uncertain results." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Liti*g., 266 F. Supp. 3d 1, 19
20  (D.D.C. 2017) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.
21  Cal. 2004)), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had
22  standing to bring a data breach lawsuit). Thus, this factor favors approval.

23      **2.      The Risk of Maintaining a Class Action Through Trial**

24          If this case were to proceed forward in adversarial litigation, Plaintiff faces the additional risk
25  of maintaining class certification through trial because Defendant would fiercely oppose class
26  certification. Assuming Plaintiff was able to proceed forward after obtaining a ruling certifying a

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 12
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  contested class, she would still face risks and delays in maintaining and litigating her class claims.

2  The Ninth Circuit recognizes the inherent risk that a district court "may decertify a class at any time."

3  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Omnivision Techs.*

4  *Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even if the Court were to certify the class, there

5  is no guarantee the certification would survive through trial, as Defendants might have sought

6  decertification or modification of the class."). Moreover, even if Plaintiff was successful in obtaining

7  class certification and winning trial in the district court, the risk of one or more lengthy appeals would

8  be high. All the while, any relief to Settlement Class Members would remain in limbo and be delayed.

9  Accordingly, the risk and uncertainty surrounding certification of the Class also supports approval of

10  the Settlement.

11          **3.     The Benefits Offered in Settlement**

12          In light of the risks and complexities of consumer protection litigation, the benefits provided

13  to the Class in the Settlement favors approval. As discussed above, the Settlement secures significant

14  benefits to compensate Settlement Class Members, including a warranty extension and

15  reimbursement program, as well as extended and expanded service benefits in the form of a free

16  annual Sunroof cleaning program. This robust relief is more than in line with the compensation

17  approved in similar automotive class action cases in this Circuit and nationwide. *See Gjonbalaj v.*

18  *Volkswagen Group of America, Inc., et al.*, No. 19-7165, Dkt. 72 (E.D.N.Y. Apr. 18, 2023) (granting

19  motion for preliminary approval with similar class benefits in sunroof-related suit implicating

20  Volkswagen and Audi vehicles); *Banh v. Am. Honda Motor Co., Inc.*, No. 19-05984, 2021 WL

21  3468113, at *7 (C.D. Cal. June 3, 2021) (granting motion for preliminary approval and finding that

22  a "warranty extension" and various resources "adequately and fairly compensates class members");

23  *Brightk Consulting Inc. v. BMW of N. Am., LLC*, No. 21-02063, 2023 WL 2347446, at *6 (C.D. Cal.

24  Jan. 3, 2023) (finding that an extended warranty and reimbursement of certain out-of-pocket costs

25  provided adequate compensation to the class).

26

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 13
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    This Settlement is a strong result for the Class. The relief offered by the Settlement is also

2    reasonable in light of "the terms of any proposed award of attorney's fees, including timing of

3    payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel's request for attorneys' fees, $350,000.00,

4    represents its lodestar amount with a modest 1.201 multiplier, and meets the Ninth Circuit factors for

5    approval. *See* Dkt. 49, pp. 8-11.

6        **4.      The Extent of Discovery Completed**

7        Plaintiff was well informed about the strengths and weaknesses of this case before entering

8    into settlement discussions on behalf of class members. The Parties propounded interrogatories,

9    requests for admission, and requests for the production of documents upon each other, obtained

10   materials and information through their own independent investigatory efforts, and PCNA provided

11   discovery regarding the number of warranty claims related to the alleged defect and its root cause

12   analysis. Moreover, the Parties engaged in substantial briefing in connection with PCNA's motion to

13   dismiss. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent

14   this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-

15   VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiff "had enough

16   information to make an informed decision about the strength of their cases and the wisdom of

17   settlement." *Rinky Dink Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at

18   *5 (W.D. Wash. Feb. 3, 2016); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th

19   Cir. 1998). This factor, too, supports final approval.

20       **5.      The Experience and Views of Counsel**

21       Class Counsel are experienced class action litigators in the field of consumer protection

22   litigation and recommend the Settlement as being fair, reasonable and adequate and in the best

23   interests of the Class Members. *See* Dkt. 40. A great deal of weight is accorded to the

24   recommendation of counsel, who are most closely acquainted with the facts of the underlying

25   litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, NO. 1:14-0030 WBS, 2017 WL 1424636, at *6 (D.

26   Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 14
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

2004). In light of the complexities of the case and the risks of continuing through further discovery, class certification, summary judgment, trial, and inevitable appeals—not to mention collecting on any judgment—Class Counsel firmly believes that the Settlement represents a favorable resolution of this litigation. "Absent fraud or collusion, courts can, and should, rely upon the judgment of experienced counsel for the parties, when assessing a settlement's fairness and reasonableness." *Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-0494-SI, 2018 WL 4495461, at *9 (D. Or. Sept. 19, 2018) (internal quotations omitted). Thus, Class Counsel's recommendation that the Settlement is fair, reasonable, and adequate "strongly favor" approval. *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191 (D. Or. 2016).

### 6.    Government Participants

Notice pursuant to CAFA was issued on May 3, 2024. Admin Decl. ¶5. As of this filing, there is no governmental participant in this matter. This factor is neutral.

### 7.    The Reaction of the Class Members to the Proposed Settlement.

The reaction of the Class Members to the Proposed Settlement has been positive and supports approval. The number of class members who object to a proposed settlement "is a factor to be considered when approving a settlement" and the "absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane*, 166 F. Supp. 3d at 1191. "When few class members object, a court may appropriately infer that a class action settlement is fair, adequate, and reasonable." *Schneider v. Wilcox Farms, Inc.*, No. 07-CV-01160-JLR, 2009 WL 10726662, at *3 (W.D. Wash. Jan. 12, 2009). Here, *only two class members have objected*. *See* 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

Moreover, as of January 5, 2025, the deadline to submit a request for exclusion from the settlement, Angeion received only twenty-one valid requests for exclusion and two objections. Admin. Decl. ¶ 17. This near total lack of opposition is a strong indication that the class supports the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

settlement. *See Clemans v. New Werner Co.*, No. 3:12-cv-5186, 2013 WL 12108739, at *5 (W.D. Wash. Nov. 22, 2013) (in settlement where one objection and four exclusions were filed, court found that "the overwhelming non-opposition to and participation in the Settlement [are] strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable."); *see also Rodriguez*, 563 F.3d at 967 (concluding that the district court "had discretion to find a favorable reaction" when 54 of 376,301 class members objected to settlement); *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *8–9 (W.D. Wash. Mar. 26, 2001) (granting final approval where "less than 1% of the class opted out and only nine objections were submitted").

The deadline to submit an objection to the settlement was also January 5, 2025, and a total two objections were submitted, neither of which provide any bases to deny final approval.

**Albert A. Torrence**

Mr. Torrence's objection is based on his contention that in order for a Settlement Class Member to take advantage of the benefit of reimbursement related to a past Covered Repair, the repair must have been performed prior to the Notice Date. *See* Admin Decl., Exhibit E. While this is true, Mr. Torrence does not account for the Warranty Extension, which covers a percentage of the cost of a Covered Repair during a period of up to six (6) years or eighty thousand (80,000) miles from the vehicle's In-Service Date. *See* S.A. § 2 A. As a secondary matter, the objection submitted by Mr. Torrence, does not meet the objection requirements prescribed by the Court in its Order Granting Preliminary Approval[4] – it does not include documentary proof he owned or leased a Settlement Class Vehicle, whether he plans to appear, or a list of prior objections. Admin Decl., Exhibit E.

**Paul Mastrandrea**

The second objection submitted by Mr. Mastrandrea is entirely based on his contention that he "paid for two separate repairs of the sunroof drain." Admin Decl., Exhibit E. However, "the possibility that a class settlement does not fully compensate each class member for the full amount of his or her loss is not ipso facto grounds for rejecting the settlement . . . . the risk of proceeding to

[4] *See* Dkt. 41.

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 16
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   trial—and possibly recovering nothing—must be weighed against the uncertainty of recovering

2   something." *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at

3   *12 (N.D. Cal. Sep. 13, 2011) (overruling objection where purported losses were not covered by

4   settlement). Settlement inherently necessitates compromise, and this proposed Settlement represents

5   a favorable result for the Settlement Class as a whole, particularly where the Settlement also provides

6   Mr. Mastrandrea other benefits, such as a yearly sunroof cleaning.

7        Neither objection meets the burden of demonstrating how the Settlement achieved is

8   unreasonable, and the Court should overrule them. *See, e.g.*, *In re Google Referrer Header Priv.*

9   *Litig.*, 87 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015); *Schechter v. Crown Life Ins. Co.*, No. 13-cv-

10  5596, 2014 WL 2094323, at *2 (C.D. Cal. May 19, 2014); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

11  1027 (9th Cir. 1998). "[I]t is the parties themselves, as opposed to the court or the objectors, who are

12  in the best position to assess whether a settlement fairly reflects their expected outcome in litigation."

13  *Edwards v. National Milk Producers Federation*, No. 11-cv-04766-JSW, 2017 WL 3616638, at *2

14  (N.D. Cal. June 26, 2017) (overruling objection to settlement despite a conflict in expert valuations).

15       Plaintiff respectfully submits that the two objections be overruled, and that the Class's overall

16  supportive reaction to the Settlement favors final approval.

17       **8.      The Settlement Treats Settlement Class Members Equitably**

18       Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class

19  members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should

20  consider "whether the apportionment of relief among class members takes appropriate account of

21  differences among their claims, and whether the scope of the release may affect class members in

22  different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note

23  (2018). In determining whether this factor weighs in favor of approval, a Court must determine

24  whether the Settlement "improperly grant[s] preferential treatment to class representatives or

25  segments of the class." *Paredes Garcia v. Harborstone Credit Union*, 2023 WL 4315117, at *5 (W.D.

26

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 17
2:22-cv-01233-TL

1  Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

2  2007)).

3       Here, the Settlement treats all Class Members equitably relative to one another – the Warranty

4  Extension and reimbursement of certain out-of-pocket costs for Covered Repairs are subject to the

5  same reimbursement rates and all Settlement Class Members are entitled to present a Settlement Class

6  Vehicle to a Porsche authorized dealer for a free annual Sunroof drain cleaning pursuant to the terms

7  and conditions of the Settlement Agreement. Thus, the Settlement treats Class Members equitably

8  relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D).

9       Likewise, the provision of the service award for Plaintiff as the Class Representative,

10 $10,000, is well in line with sums routinely approved in other class action cases in this Circuit. *See*

11 Settlement at § VIII.C; *see also La Fleur v. Med. Mgmt. Int'l, Inc.*, No. 13-00398, 2014 WL 2967475,

12 at *8 (C.D. Cal. June 25, 2014) (approving incentive awards of $15,000 each to two class

13 representatives for a $535,000 settlement).

14       In sum, the Settlement treats all Class Members equitably relative to each other, and final

15 approval is appropriate.

16                         **VII.    CONCLUSION**

17       For the reasons contained in this memorandum, Plaintiff respectfully requests that the Court

18 grant this motion for final approval of class action settlement as fair, reasonable, and adequate.

19       I certify that this memorandum contains 5,959 words, in compliance with the Local Civil

20 Rules.

21

22

23

24

25

26

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 18
2:22-cv-01233-TL

1      DATED this 6th day of March, 2025.

2                                          TOUSLEY BRAIN STEPHENS PLLC

3

4                              By: *s/Kim D. Stephens, P.S.*
                                   Kim D. Stephens, P.S., WSBA #11984
5                                  kstephens@tousley.com
                                   *s/Jason T. Dennett*
6                                  Jason T. Dennett, WSBA #30686
                                   jdennett@tousley.com
7                                  *s/Rebecca L. Solomon*
                                   Rebecca L. Solomon, WSBA #51520
8                                  rsolomon@tousley.com
                                   1200 Fifth Avenue, Suite 1700
9                                  Seattle, Washington  98101
                                   Telephone:  206.682.5600/Fax: 206.682.2992
10
                                   ***Attorneys for Plaintiff Amanda Washburn and the***
11                                 ***Putative Classes***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 19
2:22-cv-01233-TL

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992