1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE
10
11   AMANDA WASHBURN,                         CASE NO. 2:22-cv-01233-TL
12                        Plaintiff,
                                             ORDER ON PLAINTIFF'S
         v.                                  UNOPPOSED MOTIONS FOR FINAL
13                                           APPROVAL OF CLASS ACTION
     PORSCHE CARS NORTH AMERICA,             SETTLEMENT AND FOR
14   INC., a Delaware corporation,           ATTORNEYS' FEES, COSTS, AND
                                             SERVICE AWARD
15                        Defendant.
16
17
18         This matter is before the Court on Plaintiff's Unopposed Motion for Final Approval of

19   Class Action Settlement (the "Final Approval Motion")[1] (Dkt. No. 52), and Plaintiff's

20   Unopposed Motion for Attorneys' Fees, Costs, Expenses, and Service Awards (the "Fees, Costs,

21   and Service Award Motion") (Dkt. No. 49). Having reviewed the briefing as well as the relevant

22   ───────────────────────────
     [1] The terms of the settlement are set forth in a Settlement Agreement with accompanying exhibits attached as
23   Exhibit A to the Declaration of Jason T. Dennett in Support of Plaintiffs' Unopposed Motion for Preliminary
     approval of Class Action Settlement (Dkt. No. 40-1) (the "Settlement Agreement"). This Order incorporates by
     reference the definitions in the Settlement Agreement, and all capitalized terms used herein shall have the same
24   meaning as set forth in the Settlement Agreement unless otherwise set forth in this Order.

record and having held a final fairness hearing, the Court GRANTS both the Final Approval Motion and the Fees, Costs, and Service Award Motion for the reasons set forth in this Order.

## I.     BACKGROUND

### A.     Factual and Procedural Background

This case arises out of Plaintiff Amanda Washburn's allegations that Defendant Porsche Cars North America, Inc.'s 2015–23 model year Cayenne and Macan vehicles and 2014–23 model year Panamera vehicles that were equipped with a Sunroof and imported by Defendant for sale or lease by authorized Porsche-brand dealers in the United States (the "Settlement Class Vehicles") were prone to leakage and water ingress into the vehicles' interiors from the Sunroof. Dkt. No. 52 at 2. Plaintiff alleges the resulting leaks caused damage to the Settlement Class Vehicles' interiors, including, among other things, their electrical systems, audio systems, upholstery, carpets, roof headliners, and seats. *Id.*

On September 1, 2022, Plaintiff filed a Class Action Complaint against Defendant individually and on behalf of all others similarly situated (the "Complaint"). Dkt. No. 1. On November 10, 2022, Defendant moved to dismiss the Complaint and also filed a motion for a more definite statement. Dkt. No. 11. Defendant's motion to dismiss sought dismissal of Plaintiff's claims on numerous grounds, including failure to state valid claims for relief, failure to satisfy Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure, and for a lack of entitlement to equitable relief. *See id*. On September 12, 2023, the Court granted Defendant's motion for a more definite statement and denied as premature Defendant's motion to dismiss, and directed Plaintiff to file an amended complaint within fourteen days. Dkt. No. 22. Plaintiff filed an Amended Class Action Complaint on September 23, 2023. Dkt. No. 23. The Parties thereafter engaged in settlement negotiations which clarified the scope of the Settlement Class

and identity of the Settlement Class Vehicles and resulted in Plaintiff filing a Second Amended Complaint on March 11, 2024. Dkt. No. 36.

April 24, 2024, Plaintiff filed a motion for preliminary approval and presented the Court with the proposed Settlement Agreement. Dkt. No. 39. The Court granted preliminary approval of the Settlement Agreement on May 8, 2024. Dkt. No. 42. Plaintiff filed the unopposed Fees, Costs, and Service Award Motion on December 14, 2024 (Dkt. No. 49) and the unopposed Final Approval Motion on March 6, 2025 (Dkt. No. 52). The parties received two objections to the proposed Settlement Agreement. *See* Dkt. Nos. 51, 53-5. The Court held a final fairness hearing on the proposed Settlement Agreement on March 27, 2025. Dkt. No. 58. Counsel for Plaintiff and Defendant were present, and no objectors appeared for the hearing. *Id.*

**B.    The Settlement Agreement**

The key terms of the settlement are as follows:

**1.    Class Definition**

The Settlement Class is defined as "[a]ll persons and entities who purchased or leased a Settlement Class Vehicle . . . in the United States. Dkt. No. 40-1 at 11. Defendant provided Angeion Group ("Angeion"), the Settlement Administrator, with a data file containing 347,484 unique Vehicle Identification Number records that corresponded to the Settlement Class Vehicles, and Angeion identified 551,921 unique potential Settlement Class Members. Dkt. No. 53 ¶¶ 6–7.

**2.    Benefits to the Class**

The Settlement Agreement provides three types of benefits to the Settlement Class Members. First, Settlement Class Members are entitled to an extension of their New Car Limited Warranty for Settlement Class Vehicles to cover a percentage of the cost of a Covered Repair by an authorized Porsche dealer during a period of up to six (6) years or eighty thousand (80,000)

1    miles (whichever occurs first) from the vehicle's In-Service Date. Dkt. No. 40-1 at 12–14.

2    Second, the Settlement Agreement reimburses Settlement Class Members for a percentage of

3    certain out-of-pocket expenses paid for a past Covered Repair that was performed prior to the

4    Notice Date. *Id.* at 14–17. Third, the Settlement Agreement provides Settlement Class Members

5    with a free sunroof drain cleaning program once per calendar year for a period of 9 years or

6    90,000 miles from the Settlement Class Vehicle's In-Service Date, whichever occurs first. *Id.* at

7    17.

8    **3.    The Release**

9    The Settlement Agreement provides that, as of the Effective Date, Defendant and the

10    other "Released Parties" shall be released from all claims relating to existing, potential, or

11    alleged sunroof leakage that were alleged, could have been alleged, or could be alleged in the

12    future by Plaintiff or any Settlement Class Member. *Id.* at 9–10, 32–33. However, claims for

13    personal injury and property damage (except damage to a Settlement Class Vehicle or its

14    components) are expressly exempt from this provision. *Id.* at 10.

15    **4.    Attorneys' Fees, Costs, and Service Award**

16    Subject to Court approval, Plaintiff requests $350,000 to Class Counsel in fees and costs

17    and a service award to Plaintiff of $10,000. *See generally* Dkt. No. 49.

**II.    DISCUSSION**

19    **A.    Final Approval Motion**

20    Pursuant to Federal Rule of Civil Procedure 23(e), the settlement of claims brought by a

21    proposed class requires certification of the class, adequate notice to the class, and a fairness

22    hearing before the Court to determine whether the settlement is fair, reasonable, and adequate.

23

24

1    **1.    Class Certification**

2    Before granting final approval of a class action settlement, courts must assess whether the

3    class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Hanlon v.*

4    *Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998), *overruled on other grounds by Wal-*

5    *Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The reasoning underlying the Court's May 8,

6    2024 Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action

7    Settlement ("Preliminary Approval Order") provisionally certifying the class remains unchanged,

8    and the Court incorporates its prior analysis under Rule 23(a) and (b) as set forth in that order.

9    *See* Dkt. No. 42 at 3. The Court affirms its finding that Plaintiff has met her burden of showing

10   that the requirements of Rule 23(a) are met and that the class is maintainable under Rule 23(b)

11   for purposes of settlement approval. *See, e.g.*, *Juarez v. Soc. Fin., Inc.*, No. C20-3386, 2023 WL

12   3898988, at *3 (N.D. Cal. June 8, 2023) (certifying the settlement class for final approval when

13   no material changes occurred between preliminary and final certification); *Lalli v. First Team*

14   *Real Est.—Orange Cnty.*, No. C20-27, 2022 WL 8207530, at *4 (C.D. Cal. Sept. 6, 2022)

15   (same).

16   Accordingly, for settlement purposes only, the Court FINDS that the Action may proceed

17   as a class action under Rule 23(b)(3) of Federal Rules of Civil Procedure, and that: (a) the

18   Settlement Class certified herein is sufficiently numerous, as it includes approximately 551,921

19   people and 345,000 Settlement Class Vehicles, and joinder of all such persons would be

20   impracticable; (b) there are questions of law and fact that are common to the Settlement Class,

21   and those questions of law and fact common to the Settlement Class predominate over any

22   questions affecting any individual Settlement Class Member; (c) the claims of the Plaintiff are

23   typical of the claims of the Settlement Class she seeks to represent for purposes of the settlement;

24   (d) a class action on behalf of the Settlement Class is superior to other available means of

adjudicating this dispute; and (e) as set forth below, Plaintiff and Class Counsel are adequate

representatives of the Settlement Class. The proposed Class satisfies all of Rule 23's

requirements, so the Court will finally certify the Settlement Class. Defendant retains all rights to

assert that this action may not be certified as a class action, other than for settlement purposes.

The Court further finally CERTIFIES, for settlement purposes only, a Settlement Class

defined as follows:

> "All persons and entities who purchased or leased a Settlement
> Class Vehicle, as defined in Section I.X. of the Settlement
> Agreement, in the United States."

> Excluded from the Settlement Class are: (a) all Judges who have
> presided over the Action and their spouses; (b) all current
> employees, officers, directors, agents and representatives of
> Defendant, and their family members; (c) any affiliate, parent or
> subsidiary of Defendant and any entity in which Defendant has a
> controlling interest; (d) anyone acting as a used car dealer; (e)
> anyone who purchased a Settlement Class Vehicle for the purpose
> of commercial resale; (f) anyone who purchased a Settlement Class
> Vehicle with salvaged title and/or any insurance company that
> acquired a Settlement Class Vehicle as a result of a total loss; (g)
> any insurer of a Settlement Class Vehicle; (h) issuers of extended
> vehicle warranties and service contracts; (i) any Settlement Class
> Member who, prior to the date of this Agreement, settled with and
> released Defendant or any Released Parties from any Released
> Claims; and (j) any Settlement Class Member who files a timely
> and proper Request for Exclusion from the Settlement Class.

### 2. Adequacy of Notice

Pursuant to Federal Rule of Civil Procedure 23, district courts must "direct to class

members the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort." *In re Apple Inc. Device

Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022) (quoting Fed. R. Civ. P. 23(c)(2)(B)); *see

also* Fed. R. Civ. P. 23(e)(1). Procedural due process, in turn, demands that the notice be

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)). "[N]either Rule 23 nor the Due Process Clause," however, "requires actual notice to each individual class member." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

Here, the Settlement Class was notified pursuant to a notice protocol set forth in the Settlement Agreement ("Notice Program") and ordered in the Court's Preliminary Approval Order. *See* Dkt. No. 401 at 19–22, Dkt. No. 42 ¶¶ 10–11. Notice was provided to the Settlement Class of the pendency of the Action; the certification of the Settlement Class for settlement purposes only; the terms of the Settlement, including its benefits and the Release of Claims; the Settlement Class Members' rights, including the right to, and the deadlines and procedures for, requesting exclusion from the Settlement or objecting to the Settlement; the deadline, procedures, and requirements for submitting a Claim for Reimbursement pursuant to the Settlement's terms; Class Counsel's request for reasonable attorneys' fees and expenses and Settlement Class Representative service award; the time, place, and right to appear at the Final Fairness Hearing; and other pertinent information about the Settlement and the Settlement Class Members' rights. *See* Dkt. Nos. 53-2 and 53-3. Pursuant to the approved Notice Program, a notice was mailed to all members of the Class who had been identified by the Settlement Claim Administrator through the Vehicle Identification Number records provided by Defendant. Dkt. No. 53 ¶¶ 6–10. Notices that were returned as undeliverable with forwarding addresses were re-mailed to the forwarding addresses. *Id.* ¶ 12. The Settlement Administrator also maintained the Settlement Website, which provided information about the Settlement, including copies of relevant Court documents, the Settlement Agreement, the Long Form Notice, and the Claim Form. *Id.* ¶14. In addition, the Settlement Administrator maintained a toll-free number,

1    accessible 24 hours a day, dedicated to the Settlement, which utilized an interactive voice

2    response system to provide Settlement Class Members with responses to frequently asked

3    questions and essential information regarding the Settlement. *Id.* ¶ 15.

4          Ultimately, notice consisted of 551,921 Short Form Notices mailed, a website, and a toll-

5    free phone number. *See generally* Dkt. No. 53. The Notice Program as implemented reached

6    545,577 unique Class Members or approximately 98.85% of the identified Settlement Class. *Id.*

7    ¶ 13. That figure exceeds the constitutional due process requirement in this Circuit. *See, e.g.*,

8    *Askar v. Health Providers Choice, Inc.*, No. C19-6125, 2021 WL 4846955, at *3 (N.D. Cal. Oct.

9    18, 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and

10   comply with Rule 23.") (citation omitted). The Federal Judicial Center also has noted that a

11   notice campaign that reaches 70% of a class is often reasonable and satisfies due process. Federal

12   Judicial Center, Judges' Class Action Notice & Claims Process Checklist & Plain Language

13   Guide 3 (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

14         Accordingly, the Court is satisfied that Settlement Class Members received the "best

15   notice that is practicable under the circumstances[.]" Fed. R. Civ. P. 23(c)(2)(B). Therefore, the

16   Court FINDS that the Notice Program, preliminarily approved on May 8, 2024, and implemented

17   on November 6, 2024, constituted the best notice practicable under the circumstances,

18   constituted due and sufficient notice of the matters set forth in the notices to all persons entitled

19   to receive such notices, and fully satisfied the requirements of due process, Rule 23 of the

20   Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The

21   Notice Program involved direct notice via mail and the publication of the Settlement Website

22   providing details of the Settlement, including the benefits available, how to submit a claim,

23   answers to Frequently Asked Questions regarding the Settlement, important dates including that

24   of the Final Fairness Hearing, and how to contact the Claims Administrator for more

information. The Court further FINDS that all of the notices are written in plain language and are readily understandable by Settlement Class Members. The Court further FINDS that notice has been provided to the appropriate state and federal officials in accordance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, drawing no objections.

### 3.    Fairness, Reasonableness, and Adequacy of the Settlement Agreement

Federal Rule of Civil Procedure 23(e) authorizes a district court to approve a class action settlement upon finding the settlement agreement to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The rule requires the Court to consider:

> [W]hether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.* The Ninth Circuit has instructed district courts to guide their 23(e)(2) analysis by evaluating the eight factors set forth in *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). The eight *Churchill* factors are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *Churchill*, 361 F.3d at 575.

In addition, settlements that occur before formal class certification are held to a heightened standard of fairness. *See In re Apple Inc.*, 50 F.4th at 782; *accord Saucillo v. Peck*, 25

F.4th 1118, 1130–31 (9th Cir. 2022). When reviewing such settlements, courts must confirm that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (cleaned up). "This more exacting review [helps] to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes, 1-2*, 944 F.3d at 1049 (cleaned up).

### a.    *Adequacy of Representation*

For more than two years—from investigating the case to filing the action, defending against Defendant's motion to dismiss, conducting informal discovery, and engaging in settlement negotiations over the course of approximately six months to finally reach settlement— Plaintiff Washburn and Class Counsel have prosecuted this action diligently and vigorously on behalf of the Class. Dkt. No. 50 ¶¶ 15–16; Dkt. No. 52 at 2–3. Class Counsel have extensive experience in litigating product liability class actions across the country (Dkt. No. 40-2) and dedicated over 300 hours to litigating and negotiating this matter (Dkt. No. 50 ¶ 3). Plaintiff Washburn conducted independent research prior to seeking out counsel, served as the sole representative on behalf of the Settlement Class, responded to discovery requests, and actively participated in the settlement process. *See, e.g.*, *id.* ¶ 7.

Therefore, the Court FINDS that Plaintiff Washburn and Class Counsel have adequately represented the class.

### b.    *Arm's-Length Negotiations*

A district court must ensure that "the [settlement] agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Here, the Parties undertook negotiations over nearly six months—including

numerous exchanges of information and settlement proposals. Dkt. No. 40 ¶ 16. Defendant

provided discovery regarding the number of warranty claims related to the alleged defect and its

root cause analysis, and the Parties also obtained materials and information through their own

independent investigatory efforts and further engaged in substantial briefing in connection with

Defendant's motion to dismiss. Dkt. No. 52 at 11. *See In re Volkswagen "Clean Diesel" Mktg.,*

*Sales Practices, & Prods. Liab. Litig.*, No. MDL 2672, 2019 WL 2077847, at *1 (N.D. Cal. May

10, 2019) ("Lead Counsel vigorously litigated this action during motion practice and discovery,

and the record supports the continuation of that effort during settlement negotiations."). In

addition, the Parties did not discuss attorneys' fees, costs, or a service award for Plaintiff until

after the Settlement Class benefits were negotiated (Dkt. No. 40 ¶ 16), and Class Counsel moved

for approval of the fees, costs, and service awards to be determined separately from approval of

the Settlement Agreement. Dkt. No. 49.

Therefore, the Court FINDS that the record reflects the Settlement Agreement was reached

as the result of serious, informed, and arm's-length negotiations between counsel versed in the

legal and factual issues of the case as required by Rule 23(e)(2)(B).

### c.    *Adequacy of Relief*

In determining whether the relief provided to the class members is adequate under Rule

23(e)(2)(C), the "relief that the settlement is expected to provide to class members is a central

concern." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. A court also

considers the costs, risks, and delay of trial; the effectiveness of any proposed method of

distributing relief to the class; the proposed attorneys' fees; and any agreement made in

connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C).

The Settlement Agreement provides to Settlement Class Members a Warranty Extension,

a reimbursement program, and an extended and expanded service benefit in the form of a free

annual sunroof drain cleaning program. Dkt. No. 40-1 at 12–17. The relief obtained for the

Settlement Class is adequate and is in line with the relief approved in similar automotive class

action cases in this Circuit as well as nationwide. *See Gjonbalaj v. Volkswagen Group of*

*America, Inc.*, No. C19-7165, Dkt. No. 72 (E.D.N.Y. Apr. 18, 2023) (granting motion for

preliminary approval with similar class benefits in sunroof-related suit implicating Volkswagen

and Audi vehicles); *see also Banh v. Am. Honda Motor Co., Inc*., No. C19-5984, 2021 WL

3468113, at *7 (C.D. Cal. June 3, 2021) (granting motion for preliminary approval and finding

that a "warranty extension" and various resources "adequately and fairly compensates class

members"); *Brightk Consulting Inc. v. BMW of N. Am., LLC*, No. C21-2063, 2023 WL 2347446,

at *6 (C.D. Cal. Jan. 3, 2023) (finding that an extended warranty and reimbursement of certain

out-of-pocket costs provided adequate compensation to the class).

Regarding the additional under Rule 23(e)(2)(C) factors, first, the costs, risks, and

inherent delay of proceeding to trial would have been significant. This Action involved the

complex hurdle of Plaintiff showing that all Class Vehicles were sold with a common defect that

renders them prone to sunroof leaking—as exemplified by the hurdles Class Counsel faced in

litigation, including Defendant's motion to dismiss the Complaint and motion for a more definite

statement. *See* Dkt. No. 11. Defendant sought dismissal of Plaintiff's claims on numerous

grounds, including failure to state valid claims for relief, failure to satisfy Rules 8(a) and 9(b) of

the Federal Rules of Civil Procedure, and lack of entitlement to equitable relief. *Id.* Should the

case have proceeded, Plaintiff faced the additional risk of maintaining class certification through

trial in the face of Defendant's fierce opposition. Dkt. No. 52 at 12. The Ninth Circuit recognizes

the inherent risk to a plaintiff that a district court "may decertify a class at any time." *Rodriguez*

*v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Omnivision Techs. Inc*., 559

F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even if the Court were to certify the class, there is no

guarantee the certification would survive through trial, as Defendants might have sought

decertification or modification of the class."). Moreover, even if Plaintiff successfully obtained

class certification and prevailed at trial in the district court, the risk of one or more lengthy

appeals would be high.

Second, with regard to effectiveness of the proposed method of distribution, the Court

FINDS that the proposed method of distribution to be effective, as the Warranty Extension will be

effective for all Settlement Class Vehicles upon the Effective Date of the settlement, with no

action needed by Settlement Class Members. Further, the proposed process for reimbursement of

certain out-of-pocket expenses for covered repairs requires Settlement Class Members to submit

a claim form along with documentation showing Proof of Repair Expense and, where the repair

was not performed by an authorized Porsche dealer or if the repair was performed after

expiration of the NCLW period, a related affidavit. Requiring class members to download,

complete, and submit a claim form is reasonable. *See In re Toyota Motor Corp. Unintended

Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. C10-2151, 2013 WL 3224585, at *18

(C.D. Cal. June 17, 2013).

Third, with regard to the terms of any proposed award of attorney's fees, the Court FINDS

the requested attorneys' fees reasonable for the reasons stated in Section II.B.1 below. Finally,

the Court is not aware of any other agreement made in connection with the settlement proposal.

Therefore, the Court FINDS that, in light of the costs, risks, and delay possible in this case,

the relief provided to the Settlement Class is adequate under Rule 23(e)(2)(C).

### d.    *Equitable Treatment*

Rule 23(e)(2)(D) requires a district court to consider whether the settlement agreement

treats settlement class members equitably relative to each other. The Advisory Committee's Note

to Rule 23(e)(2)(D) advises that a court should consider "whether the apportionment of relief

among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union*, No. C21-5148, 2023 WL 4315117, at *5 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

In this case, the Settlement Agreement treats all Class Members equitably relative to one another: the Warranty Extension and reimbursement of certain out-of-pocket costs for Covered Repairs are subject to the same reimbursement rates based upon the age and mileage of a vehicle, and all Settlement Class Members are entitled to present a Settlement Class Vehicle to a Porsche authorized dealer for a free annual sunroof drain cleaning pursuant to the terms and conditions of the Settlement Agreement. Thus, the Settlement Agreement treats Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D).

The service award proposed for Plaintiff Washburn as the Class Representative will not be deducted from any monetary award to the Settlement Class. In addition, the requested service award to Plaintiff of $10,000 is in line with sums routinely approved in other class action cases in this Circuit. *Infra* Section II.B.2.

Therefore, the Court FINDS that the Settlement Agreement treats all Settlement Class Members equitably.

### e. *Pre-Class-Certification Review*

As this settlement occurred before a class was formally certified, the Court also must determine whether this settlement meets the heightened standard of fairness applied to

settlements occurring before formal class certification. *See In re Bluetooth*, 654 F.3d at 946.

Collusion in this context "may not always be evident on the face of a settlement, and courts

therefore must be particularly vigilant not only for explicit collusion, but also for more subtle

signs that class counsel have allowed pursuit of their own self-interests and that of certain class

members to infect the negotiations." *Id.* at 947; *accord Saucillo*, 25 F.4th at 1130–31. Therefore,

proposed agreements preceding formal class certification must be examined for more "subtle

signs" of collusion, such as (1) counsel receiving a disproportionate distribution of the

settlement; (2) the parties negotiating a "clear sailing" arrangement, which carries the potential

of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel

accepting an unfair settlement on behalf of the class; and (3) the parties creating a reverter that

returns unclaimed funds to the defendant. *Roes, 1-2*, 944 F.3d at 1049.

In this case, attorneys' fees will not be deducted from any settlement fund that has been

set aside for the class, and the fees were only negotiated after the Parties reached agreement on

the material terms of the Settlement Agreement. While Defendant agreed not to oppose a request

for fees up to but not exceeding $350,000 (Dkt. No. 40-1 at 31), the Court finds that the

requested fees are fair, reasonable, and justified. *See infra* Section II.B.1; *see also In re

Bluetooth*, 654 F.3d at 949 ("A district court therefore must ensure that both the amount and

mode of payment of attorneys' fees are fair, regardless of whether the attorneys' fees come from

a common fund or are otherwise paid." (cleaned up)). Finally, the Settlement Agreement

contains no provision for reversion of unpaid fees to Defendant.

Therefore, the Court FINDS that the Settlement Agreement meets the heightened standard

of fairness applied to settlements occurring before formal class certification.

### 4.    The Remaining *Churchill* Factors

Many of the *Churchill* factors "fall within the ambit of the revised Rule 23(e)," and therefore have already been discussed above as part of the Court's analysis. *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). The two factors not addressed above are (1) the presence of a governmental participant; and (2) the reaction of the class members of the proposed settlement.

#### a.    Presence of a governmental participant

On May 3, 2024, the Settlement Administrator provided notice of the Settlement Agreement and related materials to the Attorneys General of all states and territories as well as the Attorney General of the United States. Dkt. No. 53 ¶ 5. This notice was provided pursuant to 28 U.S.C. § 1715. *Id.* As of the date of this Order, there is no governmental participation in this Action.

#### b.    Reaction of the Class Members

The number of class members who object to a proposed settlement "is a factor to be considered when approving a settlement" and the "absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191 (D. Or. 2016). "When few class members object, a court may appropriately infer that a class action settlement is fair, adequate, and reasonable." *Schneider v. Wilcox Farms, Inc.*, No. C7-1160, 2009 WL 10726662, at *3 (W.D. Wash. Jan. 12, 2009); *see also* 4 NEWBERG ON CLASS ACTIONS § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections."). Here, only twenty-one timely requests for exclusion and two objections were submitted. Dkt. No. 53 ¶¶ 17–18.

Albert Torrence objects to the provision that a repair must have occurred prior to the Notice Date of November 6, 2024, to be eligible for reimbursement. Dkt. No. 53-5 at 3. However, this requirement only applied to Class Members seeking reimbursement for a past repair made prior to the Notice Date. Mr. Torrence's objection does not account for the Warranty Extension benefit, which will cover a percentage of the cost of a Covered Repair for up to six years or eighty thousand miles from a Settlement Class Vehicle's In-Service Date. The Court also notes that Mr. Torrence's objection did not meet the requirements for an objection as set forth in the Court's Preliminary Approval Order. Dkt. No. 41 at 21–25. Therefore, the Court OVERRULES Mr. Torrence's objection.

Paul Mastrandrea objects to the settlement because he paid for two separate repairs of the sunroof and will not be adequately compensated for the full amount of his loss. Dkt. No. 53-5 at 5. First, as the Ninth Circuit has pointed out, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Courts have repeatedly held that as settlements are the result of compromises, a class settlement that does not fully compensate each class member is not grounds for rejecting a settlement. *See, e.g.*, *In re Kia Hyundai Vehicle Theft Litig.*, No. C22-3052, 2024 WL 4800876, at *20 (C.D. Cal. Oct. 1, 2024) (overruling objections that "simply argue that the Settlement should be 'better' by providing Class Members with additional compensation"); *In re Nissan Radiator/Transmission Cooler Litig.*, No. C10-7493, 2013 WL 4080946, at *12 (S.D.N.Y. May 30, 2013) ("settlement is the result of compromise and 'full compensation is not a prerequisite for a fair settlement'") (quoting *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 242 (D.N.J. 2005)); *In re TD Ameritrade Account Holder Litig.*, No. C07-2852, 2011 WL 4079226, at *12 (N.D. Cal. Sep. 13, 2011) (overruling objection where purported losses were not covered

by settlement). Second, Mr. Mastrandrea's second repair was two years after the first, calling

into question whether the second leak was a result of the defect at issue in this case or potentially

resulted from a faulty repair or some other intervening factor. *See* Dkt. No. 53-5 at 14 (first

repair made on February 10, 2022) and *id.* at 9 (second repair made on February 12, 2024).

Therefore, the Court OVERRULES Mr. Mastrandrea's objection.

In light of the positive reaction of the class, and for the reasons stated above, the Court

finds that the *Churchill* factors weigh in favor of approval. *See In re BofI Holding, Inc. Sec.*

*Litig.*, No. C15-2324, 2022 WL 9497235, at *7 (S.D. Cal. Oct. 14, 2022) (finding that a low

number of opt-outs or objectors supports the conclusion that the relief provided to class members

is adequate).

**B.    Fees, Costs, and Service Award Motion**

Consistent with the Settlement Agreement, Class Counsel asks the Court to approve an

award of $350,000 in attorneys' fees and costs and a $10,000 service award to Plaintiff

Washburn. Dkt. No. 40-1 at 30–31.

**1.    Attorneys' Fees and Costs**

"In a certified class action, the court may award reasonable attorney's fees and

nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

District courts "have an independent obligation to ensure that the award, like the settlement

itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654

F.3d at 941. In deciding whether the requested fee amount is appropriate, a court determines

whether such amount is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*,

327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

Courts can employ one of two methods in evaluating attorneys' fees: the lodestar method

or the percentage of the recovery method. *In re Apple Inc.*, 50 F.4th at 784. "The district court

has discretion to use [either method] in common fund cases," *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (citation omitted), but, as this is not a common fund case, the Court will use the lodestar method. Under the lodestar method, the court "multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award," which can then be adjusted "by an appropriate positive or negative multiplier" based on factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Kim*, 8 F.4th at 1180–81 (quoting *In re Bluetooth*, 654 F.3d at 941–42).

Class Counsel have requested attorneys' fees and costs in the amount of $350,000 for approximately 321 hours of work. Class Counsel kept contemporaneous records of their time. Dkt. No. 50 ¶ 14. The Court has reviewed the lodestar breakdown for each attorney (*id.* ¶ 17) and finds that the number of hours spent litigating this case over nearly two years—through investigation and research, filing the complaint, opposing the motion to dismiss, conducting discovery, negotiating the settlement agreement over a period of six months, and finalizing and administrating the settlement (*see id.* ¶ 5) —is reasonable in this case.

The Court has also reviewed Class Counsel's rates. Dkt. No. 50 ¶ 17. Reasonable hourly rates are rates "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013). The relevant community is that in which the District Court sits. *See id.* at 1205. Class Counsel represents that its billing rates are consistent with rates billed for similar legal services. Dkt. No. 50 ¶ 15. District judges can also "consider the fees awarded by other judges in the same locality in similar cases," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008), and rely on their own knowledge and familiarity with the legal market in setting a reasonable rate, *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam).

1   Based upon the Court's own knowledge and familiarity with the legal market, as well as a review

2   of fees awarded by other judges within this District in similar cases, the Court finds that Class

3   Counsel's proposed billing rates are in line with those prevailing in the Western District of

4   Washington. *See Dunne v. Quantum Residential Inc.*, No. C23-5535, 2025 WL 896741, at *1–2

5   (W.D. Wash. Mar. 24, 2025) (approving hourly rates up to $975 per hour for partners in a class

6   action case); *Stanikzy v. Progressive Direct Ins. Co.*, No. C20-118, 2022 WL 1801671, at *6

7   (W.D. Wash. June 2, 2022), *aff'd*, No. 22-35524, 2023 WL 4837875 (9th Cir. July 28, 2023)

8   (approving hourly rate of $1,000 per hour in 2022 for partner in a class action case)

9        In addition, as of December 14, 2024, Class Counsel stated that their lodestar was

10  $291,407.50 (Dkt. No. 50 ¶ 17) but that they expected to accrue additional time in connection

11  with responding to class members inquiries and claim administration. *Id.* ¶ 18. Class Counsel

12  have also incurred $2,465.85 in costs. *Id.* ¶ 21. The lodestar using the December 14th accounting

13  results in a multiplier of 1.201. *Id.* ¶ 4. A premium for contingent cases encourages attorneys to

14  take on the risk of these types of cases, which would otherwise not be feasible due to the

15  significant risks and resource commitments. *See In re: Wash. Pub. Power Supply Sys. Sec. Litig.*,

16  19 F.3d at 1299–300 (citing Richard Posner, Economic Analysis of Law § 21.9, at 534–35 (3d

17  ed. 1986)). In addition, other courts in this district as well as the in the Ninth Circuit have

18  affirmed similar multipliers in other class settlements. *See Pelletz v. Weyerhaeuser Co.*, 592

19  F.Supp.2d 1322, 1328 (W.D. Wash. 2009) (approving a 1.82 multiplier); *Colacurcio et al v.*

20  *Insight Venture Partners VII LP et al*, No. C20-1856, Dkt. No. 102 at 10, Dkt. No. 108 (W.D.

21  Wash. May 11, 2022) (finding a 3.07 lodestar multiplier reasonable); *In re Infospace, Inc. Sec.*

22  *Litig.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (applying a 3.5 lodestar multiplier);

23  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050–51 & n.6 (upholding 3.65 multiplier). Finally,

24  Defendant does not oppose this request.

Based on the totality of the record, the Court's familiarity with the legal market, and the fees awarded by other judges, the Court is satisfied that the attorneys' fees and costs requested here are fair, adequate, and reasonable.

### 2.    Service Award

Service or "incentive" awards to named plaintiffs are commonplace in class actions and "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. When evaluating the propriety of such payments, district courts consider, among other factors, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and any financial or reputational risks the plaintiff faced." *In re Apple Inc.*, 50 F.4th at 786 (cleaned up); *see also id.* at 787 ("So long as [service payments] are reasonable, they can be awarded.").

Plaintiff Washburn seeks a service award of $10,000 for serving as the Class Representative. Dkt. No. 50 ¶ 6. Plaintiff Washburn conducted independent research prior to seeking out counsel, served as the sole representative on behalf of the Settlement Class, assisted in the investigation of the case, responded to discovery requests, reviewed pleadings, and actively participated in the settlement process. *See, e.g.*, *id.* ¶ 7.This request is in line with service awards granted in this district. *See, e.g.*, *Tuttle v. Audiophile Music Direct, Inc.*, No. C22-1081, 2023 WL 8891575, at *16 (W.D. Wash. Dec. 26, 2023) (approving $10,000 service awards); *Reed v. Light & Wonder, Inc.*, No. C18-0565, 2022 WL 3348217, at *2 (W.D. Wash. Aug. 12, 2022) (same); *Kater v. Churchill Downs Inc.*, No. C15-612, 2021 WL 511203, at *2 (W.D. Wash. Feb. 11, 2021) (approving two service awards of $10,000 and one service award of

$50,000); *Lennartson v. Papa Murphy's Int'l LLC*, No. C15-5307, 2018 WL 4252039, at *2 (W.D. Wash. Sept. 6, 2018) (approving $15,000 unopposed service awards to each class representative); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329–30 & n.9 (W.D. Wash. 2009) (approving $7,500 service awards and collecting decisions approving awards ranging from $5,000 to $40,000). Finally, Defendant does not oppose this request.

Therefore, the Court finds the service award requested for Plaintiff Washburn to be reasonable.

### III.    CONCLUSION

Based on the foregoing, Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (Dkt. No. 52) and Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, Expenses, and Service Awards (Dkt. No. 49) are GRANTED, and it is hereby ORDERED:

1. The Court has jurisdiction over the subject matter of this Action and over all claims raised therein and all parties thereto, including the Settlement Class.

2. The Settlement Class IS CERTIFIED as set forth in Section II.A.1. of this Order.

3. Amanda Washburn IS APPOINTED as Class Representative of the Settlement Class pursuant to Federal Rules of Civil Procedure Rule 23(a).

4. Plaintiff's attorneys Kim D. Stephens, Jason T. Dennett, and Rebecca L. Solomon of Tousley Brain Stephens PLLC ARE APPOINTED as Settlement Class Counsel.

5. The Settlement Agreement IS APPROVED as fair, reasonable, and adequate, in accordance with Rule 23(e) of the Federal Rules of Civil Procedure.

6. Any Settlement Class Member who did not make their objections in the manner and by the date set forth in Paragraph 16 of the Court's Preliminary Approval Order (Dkt. 41) SHALL be deemed to have waived any objections and SHALL be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court.

7. The releases set forth in the Settlement Agreement are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly upon the Effective Date, and in consideration of the benefits described in the Settlement Agreement, each Releasing Party SHALL have fully,

completely, and forever released, acquitted, and discharged the Defendant and all Released Parties from the Released Claims.

8. Class Counsel IS AWARDED attorneys' fees and litigation costs in the amount of $350,000. This amount SHALL be paid in accordance with the terms of the Settlement Agreement.

9. Plaintiff Amanda Washburn IS AWARDED a Service Award in the amount of $10,000. This amount SHALL be paid in accordance with the terms of the Settlement Agreement.

10. The Parties ARE DIRECTED to perform and implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Settlement Agreement.

11. This Action is hereby DISMISSED WITH PREJUDICE. Except as otherwise provided in this Final Approval Order and Judgment, the Parties shall bear their own costs and attorneys' fees. Without affecting the finality of the Judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement, including enforcement and administration of the Settlement Agreement.

12. The Clerk IS DIRECTED to close this case.

Dated this 4th day of April 2025.

Tana Lin
United States District Judge